LUCY HOOLEY, *et al.*, Respondents, *against* ABRAHAM GIEVE, *et al.*, Appellants.

(Decided May 5th, 1879.)

Upon the death of a member of a firm the surviving partner is entitled to the possession of the whole of the firm's assets, as a trustee for the purposes of liquidation.

The entire assets of the firm, subject to the payment of its debts, become impressed with a lien in favor of the representatives of the deceased partner, to the extent of the share of the deceased partner in the firm's assets. The use of such assets in the continuation of the business by the surviving partner constitutes a breach of trust and a misappropriation of such property.

Where, as a result of such continuation of the business, the stock of the old firm has become so blended and intermingled with new stock as to lose its identity, a lien will attach to the whole in favor of the representatives of the deceased partner, and to the exclusion of the individual creditors of the surviving partner, except as against a *bonâ fide* purchaser or a party who has acquired a specific lien by the levy of an execution or attachment.

Upon a breach of trust and a misuse of trust funds, when the identical fund is traced, a prior equity exists in favor of the *cestui que trust* as against creditors of the wrong-doer; and in an action to enforce such equity such creditors are not necessary parties.

Trustees appointed under a will, one of whom was the surviving partner of the testator, were directed by the will to withdraw the interest of the latter from the partnership business in which he had been engaged, and invest it in a particular manner. Contrary to directions, the business was continued by the trustees for their own profit in a new firm organized by them, the trust estate being used for that purpose and becoming so intermingled with the property of the new firm as to be indistinguishable therefrom. With the proceeds of the trust estate new goods were bought, and certain goods were purchased upon the credit of the new

Hooley *v.* Gieve.

firm, for which, at the time of the commencement of this action, they were indebted to divers parties. *Held*, that the acts of the trustees constituted a breach of trust rendering their removal proper, and entitled the *cestuis que trust* to a lien on the entire property in the hands of the trustees, to the exclusion of the creditors of the new firm.

APPEAL from a judgment of this court at special term, confirming the report of a referee upon an accounting by trustees, and from an interlocutory judgment removing the trustees and directing the accounting.

The action was brought against the defendants, individually and as trustees under a will, to remove them and compel them to account as trustees, and to have the amount found due upon such accounting declared to be a lien upon certain property.

The plaintiffs were the widow and infant children of Abraham Hooley, Jr., late of Jersey City. Abraham Hooley, Jr., before and at the time of his death was engaged in business in New York with the defendant Gieve and one Mackenzie, under the firm name of Abraham Hooley & Co. Hooley was the owner of more than two-thirds of the assets of said partnership, and the defendant Gieve was the owner of the balance.

The defendant Cutts was employed as book-keeper by the firm of Hooley & Co., which firm at the death of Hooley was solvent, and had a large surplus. Hooley died on July 28, 1873, leaving him surviving the plaintiffs, his widow and only children.

The said Abraham Hooley, Jr., left a last will and testament, as alleged in the complaint herein, whereby, among other things, after devising certain specific personal property to the plaintiff Lucy Hooley, and making certain bequests, amounting in all to the sum of $1,000, he gave and devised all the rest, residue and remainder of his property of which he should die possessed, both real and personal, to the defendants, Abraham Gieve and Samuel G. Cutts, as trustees, to have and to hold the same upon certain trusts, and for certain uses and purposes, which are set forth in the said will in the words and figures following; to wit:

" *Fifth.* . I direct my said trustees to withdraw my interest from the firm of Abraham Hooley & Co., as soon as practicable

after my death, and invest the same, with all other moneys that may be on hand at the time of my death, or that may thereafter come into their possession from sales of any portion of my personal estate, in first mortgages on improved real estate in the city of New York, State of New York, or in Jersey City, State of New Jersey, at not less than current rates of interest, or in registered bonds of the United States Government.

"The real estate of which I shall die seized, I direct shall not be sold."

"*Sixth.* I further direct my said trustees to pay over to my wife all the rents and profits and income of my estate so long as she may live."

"*Seventh.* Upon the death of my wife the said trustees shall divide my entire estate into as many shares as there shall be children of my body then living, and the children that shall have died leaving descendants. Said shares shall be of equal amount of value, but need not be separately invested, as my only purpose in so dividing my estate is to afford an easy method of fixing an amount or proportion which my devisees or legatees are from time to time to receive.

"*Eighth.* The said trustees shall transfer one of the said shares to each of the children of my body, after the death of my wife, as aforesaid; such transfer to be made immediately to those who are twenty-one years of age or over, and to those under twenty-one years of age, as they shall successively attain the age of twenty-one years."

And the said Abraham Hooley, Jr., by his said will, appointed the defendants Abraham Gieve and Samuel G. Cutts executors, and the plaintiff Lucy Hooley executrix of said will.

On September 4, 1873, this will was admitted to probate by the surrogate of the city and county of New York, and on September 13, 1873, by the surrogate of the county of Hudson, State of New Jersey, and letters testamentary were issued thereon to the defendants Gieve and Cutts. After Hooley's death the business was carried on by Gieve and Mackenzie as surviving partners until January 1, 1874.

On or about January 1, 1874, a copartnership was formed

by Gieve, Cutts and Mackenzie, under the firm name of Abraham Gieve and Company, and this new firm took possession of all the assets of A. Hooley & Co., and proceeded to do business with them until some time in 1877. No other stock ● or capital was put into the firm. Cutts and Mackenzie furnished nothing whatever. The business was a losing one and there were no profits to be divided. The old goods were sold by the firm and with the proceeds new goods were bought in the usual course of business, and certain goods were purchased upon the credit of the firm, and at the time of the commencement of this action said firm was indebted therefor to divers persons to the aggregate amount of several thousand dollars. The defendants did not withdraw Hooley's interest as soon as practicable after his death, from said firm, and in fact, never invested any part of the estate of which they were trustees, except the sum of $10,000, which they subsequently converted· to their own use.

Upon the trial, an interlocutory judgment was rendered, removing the defendants as trustees under the will, directing an account of the trust estate, and declaring the amount found due a lien upon the merchandise and assets of the defendants, and ordering judgment against the defendants for any deficiency that should remain, and for costs. A referee was appointed to take the account, and to ascertain and report the amount of the property to which the lien decreed attached. Upon the report of the referee a final judgment was entered confirming his report, distributing the fund in accordance therewith, and for the recovery by the plaintiffs of the deficiency. From this judgment the defendants appealed, bringing up also for review the previous interlocutory judgment.

*Adam C. Ellis*, for appellants.—There was no breach of trust: the relation between the parties was that of debtor and creditor (Toller Executors, 166, 167, citing 2 Ves. 33; 10 Ves., Jr. 110; 1 Term R. 295; Vid. Off. Ex. 83, and 3 Bu. C. C. 459; *Vyse* v. *Foster*, L. R., 8 Ch. App. 309; affirmed, L. R. 7 H. L. 318; *Richter* v. *Poppenhusen*, 57 Barb. 312; *Jacquin* v. *Buisson*, 11 How. Pr. 385). Trustees are not punish-

able for technical breaches of trust (Hill Trustees, 380, citing *Garrett* v. *Noble*, 6 Sim. 504; Id. 572; *Thompson* v. *Brown*, 4 Johns. Ch. 619; *Hutchinson* v. *Smith*, 7 Paige, 27). Mrs. Hooley was estopped by acquiescence in all the acts constituting the alleged breach of trust (Hill Trustees, 526, citing *Walker* v. *Symonds*, 3 Swanst. 64; *Brice* v. *Stokes*, 11 Ves. 319, 326; *Nail* v. *Punter*, 5 Sim. 555; *Booth* v. *Booth*, 1 Beav. 125, 130; *Greenwood* v. *Wakeford*, Id. 576; *Kellaway* v. *Johnson*, 5 Beav. 319; *Lord Montford* v. *Lord Cadogan*, 17 Ves. 490; *Lincoln* v. *Wright*, 4 Beav. 427; *Langford* v. *Gascoigne*, Id. 333; *Harden* v. *Parsons*, 1 Ed. 145; *Walmesley* v. *Booth*, 2 Atk. 25; *Keble* v. *Thompson*, 3 Bro. Ch. 93; Toller Executors, 485; 2 Story Eq. Juris. §§ 697, 719; 1 Williams Executors, 593; *Monell* v. *Monell*, 5 Johns. Ch. 287; *Ex parte Shakeshaft*, 3 Bro. Ch. 164; *Colt* v. *Lasnier*, 9 Cow. 319; *Sacia* v. *Berthoud*, 17 Barb. 15). The identity of Hooley and Co.'s assets is lost; hence executors of Hooley can have no remedy against any specific assets (*Barlow* v. *Yeomans*, 50 Barb. 187; *Matter of Wells*, 3 Redf. 58; *Hart* v. *Bulkley*, 2 Edw. Ch. 70; *Willett* v. *Stringer*, 17 Abb. Pr. 152; *Kip* v. *Bank of New York*, 10 Johns. 62; *Butler* v. *Sprague*, 66 N. Y. 395; *Pennell* v. *Deffell*, 4 De Gex, M. & G. 372, approved in *Van Alen* v. *American Nat. Bank*, 52 N. Y. 7; *Newt* v. *Burman*, 4 Russ. 247; *Thompson's Appeal*, 22 Pa. St. 16; *Payne* v. *Holmby*, 25 Beav. 280; Toller Executors, 487; Williams Executors, 1101; Hill Trustees, 531; Story Eq. Juris. §§ 1259, 1210; *Geery* v. *Geery*, 63 N. Y. 253). Creditors must first be paid (*Menagh* v. *Whitwell*, 52 N. Y. 146; *Egberts* v. *Wood*, 3 Paige, 517; *Wilson* v. *Robertson*, 21 N. Y. 587; *Burtus* v. *Tisdall*, 4 Barb. 580; *Washburn* v. *Goodman*, 17 Pick. 519; *Sage* v. *Woodin*, 66 N. Y. 578; *Daby* v. *Ericsson*, 45 N. Y. 790; *Kelly* v. *Scott*, 49 N. Y. 595; *Hutchinson* v. *Smith*, 7 Paige, 29; *Eighth Nat. Bank of N. Y.* v. *Fitch*, 49 N. Y. 539; *Phillips* v. *Wheeler*, 67 N. Y. 104), and are necessary parties (*Schenck* v. *Ingraham*, 5 Hun, 397; *Johnson* v. *Snyder*, 8 How. Pr. 498). Title cannot pass to plaintiffs on the principle of accession (Lewin Trusts, 211;

*Schenck* v. *Ingraham*, 5 Hun, 397 ; *Merritt* v. *Johnson*, 7 Johns. 474 ; Bouvier L. Dic. " Adjunction ").

*Stephen H. Olin*, for respondents.—It was established that the defendants committed flagrant breaches of trust, for which they should be removed (*Ackerman* v. *Emott*, 4 Barb. 626 ; *Colburn* v. *Morton*, 1 Abb. Ct. of App. Dec. 378 ; Hill Trustees, 524 ; *Att. Gen.* v. *Mayor of Coventry*, 7 Bro. P. C. 235 ; *Att. Gen.* v. *Shore*, 7 Sim. 309 ; *Att. Gen.* v. *Drummond*, 1 Dr. & W. 353 ; *Ex parte Greenhouse*, 1 Mad. 92 ; *Matter of Mechanics' Bank*, 2 Barb. 446 ; *Wedderburn* v. *Wedderburn*, 2 Keen, 722,749 ; Milne & Cr. 41–52 ; *Craig* v. *Craig*, 3 Barb. Ch. 76 ; *Deen* v. *Cozens*, 7 . Robt. 178 ; *Matter of Wadsworth*, 2 Barb. Ch. 381 ; *Quackenboss* v. *Southwick*, 41 N. Y. 117). This is the proper action and is brought by the proper parties (Hill Trustees, 194 ; *Millard* v. *Eyre*, 2 Ves., Jr. 94 ; *Bainbridge* v. *Blair*, 6 Beav. 495 ; *Wardle* v. *Hargrave*, 11 L. J., N. S., Ch. 126 ; *Cooper* v. *Day*, 1 Rich. Eq. 24 ; *Hamlie* v. *Gibson*, 16 Hun, 158). The only defense suggested—Mrs. Hooley's consent—fails (*Wood* v. *Wood*, 5 Paige, 596 ; *Wedderburn* v. *Wedderburn*, 2 Keen, 722-749). When a trustee has misapplied a trust fund, and thereby rendered himself liable to removal, the *cestui que tsust* may follow the fund whenever it may be traced, in whatever form it be found, and into the hands of any person except a *bonâ fide* purchaser or incumbrancer for value (*Newton* v. *Porter*, 69 N. Y. 133,137–140 ; Lewin Trusts, 6th ed. 732 ; Perry Trusts, §§ 837, 838 ; *Felton* v. *Long*, 8 Ired. Eq. 224 ; *Butler* v. *Hicks*, 19 Miss. 78 ; *Oliver* v. *Piatt*, 3 How. [U. S.] 333 ; *Martin* v. *Geer*, 1 Ga. Dec. 109 ; *Day* v. *Roth*, 18 N. Y. 448 ; *Piatt* v. *Oliver*, 3 McLean, 27 ; *MacGregor* v. *MacGregor*, 9 Iowa, 65 ; *Moffatt* v. *McDonald*, 11 Humph. [Tenn.] 457 ; *Taylor* v. *Plummer*, 3 Maule & S. 562 ; 2 Story Eq. § 1258 ; *Le Breton* v. *Pierce*, 2 Allen [Mass.] 12 ; *Creditors of Spencer* v. *Spencer*, 21 Ga. 200 ; *Scott* v. *Surman*, Willis, 400 ; *Whitcomb* v. *Jacob*, Salk. 160 ; *Lane* v. *Dighton*, Ambler, 409). If the trustee has mingled the trust fund with property of his own, so that the former cannot be distinguished, the *cestui que trust* can take

the resulting fund, or at least an amount thereof equal to the trust fund (*Norris's Appeal*, 71 Penn. St. 106; *Day* v. *Roth*, 18 N. Y. 448; *Cooke* v. *Addison*, 1 Eq. 467; *Lupton* v. *White*, 15 Ves. 432; *Pinkett* v. *Wright*, 2 Hare, 120; *Hart* v. *Bulkley*, 2 Edw. 70; *Barlow* v. *Yeomans*, 50 Barb. 187; *Lathrop* v. *Bampton*, 31 Cal. 17; *Docker* v. *Somes*, 2 Mylne & K. 674; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 108; *Goldsmith* v. *Stetson*, 30 Ala. 164, 167; *Ex parte Watson*, 2 Ves. & B. 414; *Willett* v. *Stringer*, 17 Abb. Pr. 152; *Kip* v. *Bank of New York*, 10 Johns. 63; *Thompson's Appeal*, 22 Penn. St. 16; *Middleton* v. *Pollock*, 35 L. T. Rep., N. S. 608; *The Idaho*, 3 Otto, 586; *Jewett* v. *Dringer*, N. J. Ct. of App. 1878).

VAN BRUNT, J.—[After stating the facts as above.]—In the foregoing statement of the case I have not attempted to state all the facts of the case, but only such as serve to present the single question which I propose to very briefly consider, which is this: has the estate of Hooley a lien upon all the assets of the firm of Gieve & Co., to the extent of the value of the property belonging to the estate which was misappropriated and put into that firm by Gieve and Cutts, to the exclusion of the creditors of said last named firm?

It is very evident that it is no answer to the assertion of such a lien that as far as Gieve and Cutts are concerned the property of the trust estate has become so blended with their own that it cannot be traced, because such blending has arisen from their own fraudulent acts, and if the trust property has been mingled with his own, by the trustee, the court will take the whole in order to indemnify the trust estate.

The question has never, as far as I have been able to discover, been considered by the courts of this State, but it has arisen in England, where the assignees of a bankrupt have claimed property used in trade upon which a lien was claimed by the representatives of a deceased partner.

In the case of *West* v. *Skip* (1 Vesey, Sr. 239), Lord HARDWICKE held that the representatives of a deceased partner had a specific lien upon the assets, although the survivor afterwards dies or becomes bankrupt, and said that "Skip therefore

is entitled to the same specific lien against the assignees as against Harwood (1), and that even as to the new stock; for in all those cases of a lien on a partnership, it is not considered as appropriated to the stock brought in, but to everything coming in lieu during the continuance or after the determination of the partnership. As in *Bucknal* v. *Roiston*, Pre. Chan. 285, where a lien was held to be on those goods which were the produce of the original goods. So in *Brown* v. *Heathcote*, Mich. T. 1749, I held that it continued on what was the produce by way of barter and sale; and that holds much more strongly in the case of a partnership trade which cannot otherwise be continued."

Lord ELDON followed the same rule in *Ex parte Rowlandson* (2 Ves. & B. 172). Whether the lien of an outgoing partner would prevail against creditors, he said, would depend simply on whether the outgoing partner left the property in the order and disposition of the bankrupt, and he held that the consent of the outgoing partner must clearly appear to have been given before he would be robbed of his lien.

In *Viner* v. *Caddell* (3 Esp. 90), the wife of a bankrupt, as administratrix of her father, had become entitled to his effects, the stock and fixtures of a bakery. She and an infant brother and sister were entitled to the distributive shares. The husband of the administratrix, with her consent, continued the business for their benefit until he failed. Lord ELDON held that, nevertheless, only her own distributive share, and that because lawfully her husband's property, would go to his assignee in bankruptcy.

In the case of *Stocken* v. *Dawson* (9 Beav. 239), the principle contended for was distinctly held. That was a case in which a surviving partner had taken possession of a brewery and stock in good faith under the provision of a will, which provision, he thought, he had sufficiently complied with; he died and transmitted the property to his son and executor, who also continued the brewery and became bankrupts. The heirs of the original deceased partner, after the lapse of eleven years, discovered that the provisions of their ancestor's will as to the transfer had not been properly complied with. They filed a

bill to get out their interest, which was sustained, and it was held that the creditors of the bankrupt were postponed to the heirs. Other people's property could not be applied to pay the bankrupt's debts. The same principle was enforced in the case of *Flockton* v. *Bunning* (8 Ch. Ap. i. 324, note).

The principles upon which these decisions were founded are clearly these :

1st. That the representatives of a deceased partner have a lien upon the whole of the assets of the firm subject to the payment of the debts of the firm for the amount which may be found to be the deceased partner's share of the firm's assets.

2d. That the surviving partner is entitled to the possession of the whole of the firm's assets for the purposes of liquidation, and he becomes a trustee for that purpose.

3d. That if the surviving partner continues the business of the firm, and uses the assets of the old firm in such continuation, he commits a breach of trust, and misappropriates property upon which a lien has been impressed for the security of the representatives of the deceased partner.

4th. That if by such continuation the surviving partner has disposed of the assets and stock of the old firm and has invested the proceeds thereof in new stock, so that the identity of the old stock and assets are lost, and has mingled in such new stock property of his own in such a manner that it cannot be separated, the court will impress the lien of the representatives of the deceased partner upon the whole of the new stock to indemnify the trust fund, except as against a *bonâ fide* purchaser or a party having acquired a specific lien by the levy of an execution or attachment.

5th. That such lien will be enforced to the exclusion of the individual creditors of the surviving partner, upon the ground that it would be more inequitable to appropriate any portion of the trust funds to the payment of the individual debts of the surviving partner than that some portion of his individual property, which he had so mingled with the trust funds that its identity was lost, should be appropriated to the indemnification of the trust fund. The surviving partner could give to

Hooley v. Gieve.

the representatives of the deceased partner, a mortgage or a bill of sale of the whole of his own estate to make good the trust fund to the exclusion of his individual creditors (and this is all the court does in enforcing this implied lien); but the surviving partner could not give a mortgage upon or a bill of sale of any portion of the substituted trust property to secure any of his creditors.

The court marshals the equities and gives a prior lien to the greatest.

In the cases cited, the courts in deciding them seem to have considered to be established beyond all question that a lien existed even upon new stock, and devote attention chiefly to the discussion of other questions.

It seems to me that it would be useless to attempt to discuss at length these propositions, because they of themselves at once suggest to the mind the common and plain legal and equitable principles upon which they are founded, and a more extended statement would tend rather to obscure than elucidate.

It follows, therefore, that the estate of Abraham Hooley, deceased, has a first lien upon all the assets of Gieve & Co., which have become so mingled with the assets of the old firm, and the proceeds thereof, as not to be distinguishable therefrom, to an extent necessary to indemnify such estate.

The judgment should be affirmed, with costs.

CHARLES P. DALY, Ch. J., concurred.

LARREMORE, J.—This case comes up for review on two appeals, one from an interlocutory order removing the defendants as trustees and directing an account of the trust fund, the other from a final judgment rendered on such accounting in favor of the plaintiffs, for $35,401.38. Two tribunals, after mature deliberation and in well considered opinions, have reached the conclusion that as between the *cestuis que trust* and themselves, the trustees under the will of Abraham Hooley, Jr., deceased, have diverted and misappropriated the

trust fund committed to their management. If this conclusion be supported by the testimony, their liability is unquestioned. The inventory filed by them with the surrogate of Hudson county, N. J., showed the amount of such trust fund to be $74,337.41. This sum they were directed by the will to withdraw as soon as practicable after the death of their testator, and to invest the same as by him directed. Disregarding his positive instruction, they formed a new copartnership, of which these trust assets constituted the major part of the capital, carried on the business of the late firm, purchased merchandise which they mingled with the stock on hand, and though there were apparently no profits, each partner drew out moneys of considerable amount for their individual use. Not only this, but as executors they collected a life policy of the testator for $4,902.84, and appropriated that sum to the use and benefit of the new firm. The only investment made by them of the trust fund was the sum of $10,000 on a bond, which they subsequently hypothecated to secure a loan of money to themselves. Neither Cutts nor Mackenzie furnished any capital; on the contrary, they drew from the firm largely in excess of their stipulated amount. I am of opinion that equitable interference in this case was properly invoked and applied, 1st. Because the trust fund was traced and found. 2d. Because the defendants cannot, by mingling other property with the trust fund, defeat an equitable lien thereon. It is obvious that the defendants were guilty of a breach of trust (Hill on Trustees, 524; *Wedderburn* v. *Wedderburn*, 2 Keen, 749; *Colburn* v. *Morton*, 1 Abb. Ct. of App. Dec. 378; *Ackerman* v. *Emott*, 4 Barb. 626; *Craig* v. *Craig*, 3 Barb. Ch. 76; *Hooley* v. *Gieve*, Com. Pleas, General Term, May, 1877).

As between the trustees and the infant plaintiffs, Mrs. Hooley's acquiescence and consent would not constitute a defense (*Wood* v. *Wood*, 5 Paige, 596). But the court held that she did not consent, and there is evidence to sustain the finding.

It will not be disputed that in case of a misapplied trust, the cestui que trust may follow and attach the trust fund,

except as against a bonâ fide purchaser or incumbrancer for value (2 Story Eq. Juris. § 1258; Lewin on Trusts, 732; Perry on Trusts, §§ 837, 8; *Le Breton* v. *Pierce*, 2 Allen, 12; *Oliver* v. *Piatt*, 3 How. [U. S.] 333; *Day* v. *Roth*, 18 N. Y. 448; *Newton* v. *Porter*, 69 N. Y. 133).

Nor can there be a doubt upon the evidence, as to the mingling of the assets of the old and new firms. The referee in his report excepted what the testimony warranted, and in the absence of any proof of sale, levy by attachment or execution, death, or insolvency, against or on the part of the trustees, the creditors of the new firm acquired no superior lien to the proceeds of property, the title to which had previously vested in the receiver appointed in this action (*Hart* v. *Bulkley*, 2 Edw. 70; *Barlow* v. *Yeomans*, 50 Barb. 187; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 108; *Lupton* v. *White*, 15 Ves. 432; *Day* v. *Roth*, *supra*. See also, *Jewett* v. *Dringer*, New Jersey Ct. of Appeals, MSS).

By the order of March 14, 1877, appointing a receiver in this action, the plaintiffs acquired an equitable lien upon the assets, superior in point of right and time to that of any general creditor, or that of Wardlaw, the receiver by the order of appointment of January 14, 1878. It appeared in evidence that the actions in which he was thus appointed were commenced subsequently to March 14, 1877, and after the receiver under the order of that date had taken possession of the firm assets. As no new capital up to this time had been paid into the new firm by either partner, as the old goods were sold, and the proceeds used in the purchase of new goods, or for the benefit of the partnership, the claim of Wardlaw as receiver in behalf of a judgment creditor to a prior lien upon the trust fund, is preposterous. As to a breach of trust and misuse of trust funds, the defendants stand confessed; and yet when that identical fund is traced and discovered, it is insisted that a prior equity exists in favor of a creditor of the wrong-doer. The mere statement of the proposition proves its fallacy.

The defendants made no attempt to distinguish the new goods from the old, when the receiver took possession of them

as mingled. Of their own neglect they cannot now take advantage (*Harford* v. *Lloyd*, 20 Beav. 310 ; 2 Kent Comm. 437 ; Story's Eq. Juris. § 1261, and cases above cited).

The point that the general creditors of Abraham Gieve & Co. should have been made parties to this action, was not well taken. Their rights were subordinate to any equitable lien upon the specific fund, and were not prejudiced by the proceedings taken to enforce such lien. Nor was Mackenzie a necessary party to the action. He advanced nothing in capital, and was not to share in the losses of the business. He withdrew from the firm, in its debt, and it was not shown that he had any interest in the trust fund after his withdrawal.

The exceptions to the rulings are too numerous to particularize.

After examination, I am of opinion that no error is shown by the record, and that the judgments appealed from should be affirmed, with costs.

Judgments affirmed, with costs.*

---

* The judgment entered upon this decision was, on appeal to the court of appeals, affirmed upon the facts and the opinions in this court, November 9, 1880. (See 82 N. Y. 625.)