McClosky agt. Stewart *et al.*

## N. Y. COMMON PLEAS.

JOHN McCLOSKY agt. HENRY STEWART *et al.*

*Creditor's bill — will lie to reach personal as well as real property.*

A creditor's bill will lie to reach personal as well as real property claimed to have been transferred by a judgment debtor in fraud of his creditors; and where the property that can be reached is machinery, tools, &c., such new tools and machinery as have been purchased for the purpose of supplying waste of ordinary wear and tear are properly included. ·

*Special Term, April,* 1882.

*Robert S. Green* and *Frank J. Dupignac*, for plaintiff.

*Edward H. Hobbs, E. A. S. Mann* and *J. W. Perry*, for defendants.

VAN BRUNT, *J.*— This is is a creditor's bill filed to reach certain property claimed to have belonged to one Henry Stewart, and by him transferred in fraud of his creditors. The evidence shows that prior to January 18, 1879, the defendant, Henry Stewart, for many years had been a manufacturer of sewing machines in the city of New York, and was at that date in the possession of certain tools, fixtures and machinery, with which he was carrying on said business; that on the 19th of November, 1878, a judgment was obtained against said Henry Stewart by the plaintiff for $992.88, and which judgment also established the rights of the plaintiff to a share in the profits arising from the use of a certain device which Henry Stewart was using in his business as a sewing machine manufacturer.

· Execution upon this judgment having been stayed, on the 17th of January, 1879, such stay was vacated, and on the 18th of January, 1879, the certificate of incorporation of the Henry Stewart Manufacturing Company was filed, and it took possession of all the machinery, tools and fixtures, and machines

manufactured and in course of manufacture, book accounts and good will which had belonged to Henry Stewart, or with which he had been carrying on business.

The only trustees and incorporators of said company were the said Henry Stewart, Frances Stewart, his wife, and Beatte Mills, his daughter. The capital stock of said company was to be $50,000, and all that was issued was issued to the wife of said Henry Stewart and to his daughters, with the exception of $1,500 which was issued to the said Henry Stewart.

The Henry Stewart Manufacturing Company, under the presidency of Henry Stewart and under his direction and sole control, carried on business until August of 1880, when a new corporation was formed by Henry Stewart, Erastus Crawford and William Niemann, the nominal capital being $250,000, the Henry Stewart Manufacturing Company transferring to the Stewart Manufacturing Company the same property with which it had commenced business, including such new tools and machinery as had been bought to replace those which had been worn out in the course of the business, and issued stock to the amount of $150,000 in payment therefor to the stockholders of the Henry Stewart Manufacturing Company, and such stock was issued as follows: One hundred thousand dollars to Frances Stewart; $49,000 to Beatte Mills, and $1,000 to Henry Stewart. No money was paid upon this transfer; neither was any cash put in the business, with the exception of $2,000 contributed by William Niemann, and all the stock that was issued amounted to $156,600.

On the 29th of July, 1881, the plaintiff recovered a judgment against Henry Stewart upon said contract above mentioned, for $13,212.84, and an execution issued to the sheriff was returned unsatisfied.

The defendants claim that no ownership in the property transferred to the Henry Stewart Manufacturing Company, has been shown to be in Henry Stewart; and, if there was, the property transferred being personal property, a creditor's bill will not lie to reach it. Various authorities have been

McClosky agt. Stewart *et al.*

cited by the defendants to support the latter proposition, which, although it may seem to be established by certain *dicta*, has never been sustained by any direct decision; and in the only decisions where the question has come up with reasonable directness, the contrary position has been held. The result of a rule such as has been claimed upon the part of the defendants to have been established in the case of a creditor who was unable to indemnify the sheriff, would deprive him of every opportunity that he might have to attack a fraudulent conveyance. If the judgment debtor should be so fortunate as to have a creditor who was not able to indemnify the sheriff, in order that he might compel him to make a levy, such debtor might make any transfer of his property, no matter how fraudulent, and the judgment creditor would be remediless.

In the case at bar, transfers have been made of the property in question. The property is claimed to have changed possession, and it is for the purpose of establishing the fraudulent character of the conveyances of this property that this action is brought.

It is also urged upon the part of the defense, that the evidence in this case shows that the property in question prior to this transfer to the Henry Stewart Manufacturing Company, was sold at public auction under a chattel mortgage. It is true that the witness Snyder so testified in answer to a question which did not call for such a response. A motion was at once made by the counsel for the plaintiff to strike out the testimony in regard to the chattel mortgage, upon the ground that the mortgage itself and the person who conducted the sale were the best evidence. The ruling of the court was that it would allow the evidence to stand, and if testimony was not produced which would sustain the evidence given, it should fall.

The case is entirely barren of any evidence of the existence of any chattel mortgage. There is not the slightest evidence that any sale was ever made under any chattel mortgage;

there is not the slightest evidence by what authority this pretended sale was made, and the case is entirely barren in testimony as to who purchased upon any such sale. By this pretended auction sale under a pretended chattel mortgage (because, in view of the circumstances of the case, if such chattel mortgage existed, if such sale had taken place under the mortgage, the defendants would have undoubtedly proved it) Henry Stewart's property upon the eve of a judgment, in the face of a large unliquidated claim, is sold to somebody, to whom we are not informed or at what price. I say it was Henry Stewart's property, because, under the evidence in this case, he being shown to be in possession of it, shown to have carried on business with it, the presumption would be that it belonged to him, unless some evidence to the contrary was shown, especially in view of the fact that shortly prior to this time Henry Stewart had sworn that he was worth $50,000 over and above all his debts and liabilities, and he is not shown to have been possessed of any other property. There is not the slightest evidence that the persons to whom the stock of the Henry Stewart Manufacturing Company was issued, ever acquired by such sale the slightest interest in the tools and machinery which, it is claimed, were sold at such pretended sale. There is no evidence as to any transfer by Henry Stewart of the book accounts to anybody for any consideration, and yet they all passed into the hands of the Henry Stewart Manufacturing Company, and stock is issued to the family of Henry Stewart for such book accounts, as well as for such tools and machinery.

There does not seem to be the slightest particle of evidence which can possibly sustain the good faith of such a transaction.

Upon the evidence as it stands, it is one of the most slovenly attempts to cover up an alleged fraudulent transfer that has ever come under my observation. There is not a scintilla of evidence to show the slightest good faith upon the part of anybody connected with the transaction.

After this pretended disposition of the property, Henry

Stewart carries on the business just as before, has the sole control of it — to be sure his wife and daughter draw money out of the business as though it was a copartnership and not a corporation, and after they had received this money, without any authority from the corporation, Henry Stewart, an insolvent, kindly consents to assume the burden of their responsibilities, the amounts are charged to him, and the accounts of the wife and daughter are balanced.

As to the transfer to the Stewart Manufacturing Company, there is no more evidence of good faith than existed in the transfer to the Henry Stewart Manufacturing Company. No money passed, not a dollar was paid, except, perhaps, the paltry $2,000 contributed by Niemann — to be sure, the trustees were different, with the exception of Henry Stewart, and the stock was increased; but, as usual, the only persons that got the stock were Henry Stewart and his family — Henry Stewart receiving a mere nominal amount of the $150,000 issued and his family receiving the balance. Some $6,600 worth in stock seems to have been issued to other people, who were creditors, some of whom were creditors of the corporation, and one of whom — Niemann — seems to have put in the only cash that ever graced any one of these transfers.

Henry Stewart knew of the fraudulent character of the transfer to the Henry Stewart Manufacturing Company, and he is president of the new corporation and knew perfectly well how fraudulent this second transfer was.

There is no direct evidence going to show that the two other trustees were acquainted with the fraudulent character of this arrangement, but they seem to have been unwilling to go upon the stand to testify as to their good faith, and in view of the suspicious circumstances attending the whole business, it must be assumed that such failure to show their good faith was because they did not dare to undergo an examination as to the circumstances attending these transactions.

It is claimed that the creditors of the new corporation will

lose their security for their debts in case the plaintiff in this action should be allowed to succeed.

I fail to see the force of such an argument. It applies to every transfer of this description where a party fraudulently transfers his property for the purpose of escaping a liability which he anticipates, although it has not ripened into judgment; and where parties give credit to a fraudulent transferee, upon the faith of this apparent title to the property so fraudulently transferred, it certainly is no greater hardship to have to lose their debt than it would be for the creditor to lose his claim upon the property transferred, because of such fraudulent transfer.

It is suggested that the only property that can be reached in this case is the machinery, tools, &c., which were in existence at the time of the first transfer. This may be true as far as the manufactured goods or goods in the process of manufacture may be concerned, but it does not apply to such new tools and machinery as may have been purchased for the purpose of supplying the waste of ordinary wear and tear. The parties in possession have had the benefit of the machinery and tools, have worn them' out to a certain extent in their business, they have had the benefit of such waste, and there is no reason in law or in equity why the repairs which may have been made to supply such waste should not follow the property itself.

As well might it be said in the case of a fraudulent transfer of an engine, while in the possession of a fraudulent transferee, the piston rod of which is broken, and a new one was supplied, that the judgment creditor, when he gets possession of the engine, would not be entitled to take with it the new piston rod which had been placed there to replace the one which had been broken. Or suppose a ship had been transferred fraudulently, and while in possession of the fraudulent transferee some new planks had been put upon her, it could equally well be claimed that the creditor could not take those planks with the ship, but that they must be removed.

The People agt. Bragle.

Where a fraudulent transferee mingles his own property with that which he has so fraudulenty received, he cannot claim that the property so mingled shall subsequently be assorted and laid aside for the payment of his creditors (*Hooley* agt. *Gieve*, 82 *N. Y.*, 625 ; *Manuscript opinions in Court of Common Pleas*).

The plaintiff, therefore, is entitled to judgment, with costs and an extra allowance. Findings of fact to be settled upon two days' notice.