### DETERMINED IN THE

# FIRST DEPARTMENT,

### AT

# GENERAL TERM,

## 𝕸𝖆𝖗𝖈𝖍,* 1887.

---

THE PEOPLE OF THE STATE OF NEW YORK EX
REL. NATHAN STRAUSS AND OTHERS, RESPONDENTS,
*v.* MICHAEL COLEMAN AND OTHERS, AS COMMISSIONERS
OF TAXES AND ASSESSMENTS OF THE CITY OF NEW YORK,
APPELLANTS.

*Taxation — when the interest of a deceased partner in the firm assets cannot be assessed
against his executors, as a debt due from the survivors.*

In November, 1885, one Jonas Strauss, residing in the city of New York and
doing business in that city, and also in the city of San Francisco, died, leaving
a will of which the relators were appointed executors, which was duly admitted
to probate in January, 1886. At the time of his death the said Jonas was a
member of a firm carrying on business in San Francisco, the value of the
interest of Jonas in the assets thereof, in November, 1885, being estimated at
about $700,000. Before the value of the interest of the decedent in the firm
had been ascertained, and before any accounting had been had between the
relators, as executors, and said firm, or any money or assets of the firm had
been received by them, the respondents, on the second Monday of January,
1866, assessed the relators, as executors and trustees, in the sum of $100,000 for
personal property

*Held,* that they erred in so doing.

That there was, at that time, no debt or obligation for the payment of money
due and owing from the survivors of the California firm to the executors of
their deceased partner, within the meaning of those terms as used in chapter 392
of 1883, or section 3 of 3 Revised Statutes (7th ed.), 982, defining what property
should be subject to taxation.

---

* Decisions handed down March 31, 1887.

APPEAL from an order, made at Special Term, vacating an assessment for personal property made by the respondents.

Jonas Strauss, residing in the city of New York, and doing business in said city and also in San Francisco, died in New York in November, 1885, leaving a will by which the relators were appointed his executors and trustees. The will was duly admitted to probate in January, 1886, and the relators, who also resided in New York city, duly qualified as the executors thereof. At the time of his death the said Jonas Strauss was a member of the firm of Levi Strauss & Co., of San Francisco, and of the firm of J Strauss, Brother & Co., of New York. The members of both firms were Jonas Strauss, Levi Strauss, estate of David Stern, Nathan Strauss, Jacob Stern and David Marks. The value of the interest of decedent in said firm in San Francisco had not been ascertained on the second Monday of January, 1886, nor had any accounting been had between the relators, as executors, and said firm with a view of ascertaining the value of such interest. On said last mentioned day the assets of said firm in San Francisco consisted of local securities of California, government bonds and stock in trade, all of which were in California, and on said 'day the respondents assessed the relators, as executors and trustees, in the sum of $100,000 personal property. The value of the interest of Jonas Strauss in the assets of his firm in November, 1885, was supposed to be about $700,000, none of which had been paid over to the relators until after the second Monday of January, 1886. Between that date and April 24, 1886, the relators received a little over $500,000 from the surviving members of the firm in San Francisco on account of the deceased member's interest in the assets of the firm. On April 24, 1886, the relators, having objected to the assessment, had a hearing before the respondents upon the question of their liability, and in May, 1886, the respondents decided that the relators were liable to pay taxes on said assessed sum of $100,000. The relators then, pursuant to the provisions of the Laws of 1880 (chap. 269), obtained a *certiorari* to review such decision. Testimony was taken, and upon the submission of the question to the court it was held that the assessment was illegal, and from the order and judgment thereupon entered this appeal is taken.

*George S. Coleman*, for the appellants.

*W. F. Severance*, for the respondents.

Van Brunt, P. J.:

The only question which is presented by this appeal is whether or not on the second Monday of January, 1886, there was a debt or obligation for the payment of money due and owing from the survivors of the California firm to the executors of their deceased partner exceeding $100,000. In determining the question it is necessary to consider for a moment the relations which surviving partners bear to the firm assets and to the personal representatives of the deceased partner.

In the case of *Daby* v. *Ericsson* (45 N. Y , 786–789) it is held that " upon the death of one partner, the demands and choses in action of the copartnership belong to the surviving partners, and they possess the sole and exclusive right to reduce them to possession, and when recovered they stand as trustees for the representatives of the deceased partner to the extent of his interest. The law not only vests the legal title to the choses in action in the surviving partner, but it cast upon him the duty to get in the debts and settle the affairs of the partnership. The *jus accrescendi* exists for this purpose."

The surviving partners have, therefore, the whole legal title to the assets of the firm, but such assets, subject to the payment of debts, are impressed with a lien in favor of the representatives of the deceased partner to the extent of the share of the deceased partner in the firm's assets, and, although the surviving partner is entitled to the possession of the whole of the assets of the firm for the purposes of liquidation, he is a trustee for that purpose and receives them impressed with the lien above stated ; and in case the surviving partner misconducts himself as a trustee, for the purposes of liquidation, and having disposed of old assets, invests the proceeds into new assets or stock, and mingles such purchases with stock bought upon his own credit so that the same cannot be separated, the lien above mentioned is impressed upon the whole stock to indemnify the trust fund except as against *bona fide* purchasers or a party having acquired a specific lien by the levy of an execution or attachment. And this right, acquired by lien, is

carried so far that it may be enforced to the exclusion of the individual creditors of the surviving partner, whose debts may have been incurred in the purchase of the very stock mingled as stated above. (*Hooley* v. *Gieve*, 9 Daly 104, affirmed in Ct. of App. on opinion in court below, 82 N. Y., 625.)  It would thus appear that the representatives of a deceased partner have something more tangible than a mere claim for an accounting against the surviving partner ; that they have a lien upon the firm assets to the extent of the deceased partner's interest, which lien they may enforce, according to equitable principles.  But does the liability of the survivors of the deceased partner constitute a debt or obligation for the payment of money ?

In the statute it seems to have been supposed that the words " debts " and " obligations for the payment of money " were applicable to different species of personal property, and that by " obligations for the payment of money " the legislature meant to describe written instruments for the payment of money, and not to the mere duty to pay money, which might be represented by the word " debt."  Did, therefore, any debt exist on the second Monday of January, 1886, which was due or owing to the relators from the surviving members of the firm of the deceased ?  The surviving members, as has been seen, were entitled to the possession of the whole of the firm's assets for the purposes of liquidation and they became trustees for that purpose.  The relators, it is true, had an equitable lien upon these assets to the extent of having them applied solely to the purposes of liquidation, but no further.  They had no legal claim as long as the surviving partners conducted the liquidation in a proper manner, and could not in any way interfere therewith, and their legal claim arose only after it had been determined what the interest of the deceased was and a duty to pay over existed.  The trustee was under no obligation to pay over, there was no debt due or owing by him to the representatives of the deceased partner until liquidation, until all the firm debts have been paid and until the interest of the deceased partner had been absolutely determined and fixed.  When these things had been done, then a debt arose due from the surviving partners to the personal representatives of the deceased partner, which could be enforced.

In the case at bar none of these things had been done at the time of the imposition of the tax, and hence no debt existed. It is true that there was an obligation resting on the surviving partners to liquidate the affairs of the firm, as trustees, for that purpose, which obligation the personal representatives of the deceased partner could enforce, even to the extent of claiming their equitable lien upon the firm's assets as above mentioned; but such an obligation cannot be said to be an obligation for the payment of money, but rather an obligation to execute a trust. Therefore, stating the claims of the representatives of the deceased member of the firm in their strongest light, they do not seem to be either a debt or an obligation to pay money as these terms are used in the statute under consideration.

We notice in the points of the appellants that particular attention is called to the words *debts due from solvent debtors*, whether on *account, etc.*, as though the words "debts due on account" referred to a case like the present where a debt might result from an accounting. We think the word "account" is there used in its mercantile sense, and that it does not refer to those cases where a person is entitled, in equity, to have an account taken to settle the rights and interests of parties to a fund.

The order and judgment appealed from must be affirmed, with costs.

Bartlett, J., concurred.

Judgment and order affirmed, with costs.