ORANGE COUNTY.—HON. R. C. COLEMAN, SURROGATE.—April, 1887.

MATTER OF YOUNGS.

*In the matter of the disposition of the real property of* HENRY YOUNGS, *deceased, for the payment of his debts.*

It *seems* that trust money may be followed, not only into land wrongfully purchased therewith by the trustee, but also into land purchased therewith by one to whom the trustee has wrongfully lent it.

In order to impress a trust upon land purchased by one holding money belonging to the trust, the conversion of the trust money into the property sought to be reached must be clearly shown ; it is not enough to show possession of trust funds and purchase of the property.

Where trust moneys are deposited in a bank, and the depositor subse-

quently purchases property with funds drawn from that bank, the *cestui que trust*, seeking to follow the trust moneys into the property purchased, must show that, but for the intermingling of moneys in the bank, the money employed in the purchase would have been the identical trust moneys deposited.

Hence, where, in a special proceeding instituted to procure the disposition of a parcel of real property of decedent, for the payment of his debts, certain incompetent infant *cestuis que trustent* sought to be paid out of the proceeds in preference to other creditors, on the ground that their trustee had unlawfully lent funds of their trust to decedent who had purchased the property in question therewith ; and the evidence showed that, though decedent had borrowed such funds and deposited them in his bank, his account had been overdrawn thereafter and before he drew the amounts which he paid for the property,—

*Held,* that the preference sought to be secured must be refused.

APPLICATION for the disposition of decedents real property, for the payment of his debts.

Decedent died September 9th, 1885, and his widow, Annie J. Young was duly appointed administratrix. At the time of his death, he was the owner of valuable real estate in New York city, Brooklyn and Orange county, one parcel being a tract of 30 acres in the last named county, known as the Thompson purchase. Even after the sale of the real estate, there would not be sufficient to pay the debts. The other facts appear sufficiently in the opinion.

H. C. DURYEA, *for petitioner, the administratrix.*

G. O. HULSE, *for committee of Henry Y. and Caroline Lewis.*

THE SURROGATE.—Henry Youngs, Sr., the uncle of the decedent, and Mrs. Caroline Lewis, were the executor and executrix of Charles G. Ferris, deceased, the father of Mrs. Lewis. Henry Youngs, Sr., died, and the decedent and one Kelly were appointed his executors. Upon a settlement had, on December 24th, 1870, between Mrs. Lewis as surviving execu-

trix of Ferris and the executors of Henry Youngs,
Sr., it was ascertained that Youngs, Sr., as executor
of Ferris, owed the estate $10,350.97. For this amount
the executors made their check to Mrs. Lewis, and
took her receipt in full settlement. Mrs. Lewis en-
dorsed the check, and gave it to her husband to
deposit. The check was left by him in the safe of
the decedent, to be called for, which Mr. Lewis did
several days after, when he was informed by the dece-
dent that he had used it, and he then offered Mr.
Lewis his note payable " to Samuel I. Lewis, guard-
ian," for $10,000, and cash, $350.97, in place of the
check. Mr. Lewis says he demurred, but received the
note and money. These moneys were a trust fund,
to be held for the benefit of Mr. and Mrs. Lewis'
minor children under the will of said Ferris. In
May, 1874, the decedent paid Mr. Lewis on this note
$6,000, and gave a similar new note for the balance
then unpaid, $7,455.66. On November 1st, 1881, the
sum of $506 was paid on the second note, and on
May 23d, 1883, the further sum of $5,600, when the
second note was taken up and a third note given for the
balance then unpaid, $5,574.59, which is still unpaid.

The $10,350.97 check was deposited by the deced-
ent in the bank to his credit, on February 21st, 1871.
On that day, before depositing this check, his account
was overdrawn $1,179.61. Afterwards, on the same
day, he drew from his account $10.936.65, leaving his
account again overdrawn $2,116.26. After that day
and before May 24th, following, he deposited various
sums, and drew against the same, so that on the last
mentioned day, there stood a balance in his favor of

$8,010.48.   Out of this amount he drew $1,500 and paid it to one Thompson as part of the purchase price of 30 acres of land sold by the latter to deeedent, and on January 31st, following, the decedent drew and paid to Thompson the further sum of $2,000, the balance of the purchase price.   How much had been deposited and drawn out in the meantime does not appear, except the general statement of " large sums." He did not, however, at any time overdraw his account.   It is proper to state that the knowledge of the decedent's bank account is derived from a cash account kept by him, which the parties assume to be a correct showing of the former.

Upon this state of facts, it is claimed in behalf of Caroline F. and Henry Y. Lewis, by their committee, that a resulting trust is raised in their favor in this 30 acres of land, so that they are entitled to be first paid from the proceeds of the sale before the general creditors.

When the executors of Youngs, Sr., gave their check to Mrs. Lewis as the executrix of Ferris, and took her receipt therefor, the trust fund under the circumstances, passed from them to Mrs. Lewis, and she became its custodian, and when the decedent subsequently received the check, he did so simply as a borrower from her, but with a full knowledge of the trust character of the fund.   Whatever may be intended to be implied by the testimony of Mr. Lewis as to the manner in which the decedent possessed himself of the check, it is evident that Mr. Youngs considered it as a loan, and the subsequent acts of both Mr. and Mrs. Lewis were a recognition and rati-

fication of the transaction as a loan.   But it is said
these children were minors, and *non compotes,* and
hence never did or could consent to the transfer of
the fund from the decedent as one of the executors
of Youngs, Sr., to himself as borrower from the exec-
utrix.   The payment to Mrs. Lewis as the surviving
executrix of Ferris was a proper act and bound the
*cestuis que trustent,* and the only right they can have
to present their claim against the decedent's estate is
by subrogation to the right of the executrix to do so.
I do not consider the fact that the notes were made
payable to "Samuel I. Lewis, guardian," changes the
relation of any of the parties.   He was not the
guardian of the children, and could not recover on
the notes, either as guardian or individually.   His
only standing in the transaction was that of an agent
of his wife as executrix of Ferris.

Conceding the law to be that trust money can be
followed not only into lands wrongfully purchased
with it by the trustee, but also into lands purchased
with it by one to whom the trustee has wrongfully
loaned it, and Wilson v. Foreman (2 *Dickens R.,* 593),
which is still quoted as good law, would seem to so
hold, I am, nevertheless, of the opinion that this land
is not impressed with this trust because of a failure
to trace the funds into its purchase.   The conversion
of the trust moneys specifically, as distinguished from
other moneys, into the property sought to be sub-
jected to the trust must be clearly shown.   It is not
sufficient to show the possession of trust funds and the
purchase of property (Ferris v. Van Vechten, 73 *N.
Y.,* 113).   This rule may appear to have been some-

what relaxed in a case where the moneys were inter-mingled with other moneys in a bank account, and that account drawn from, so that less than the trust fund remained. What remained was held to belong to the fund (Rabel v. Griffin, 12 *Daly*, 24). And so in another case, where trust moneys were intermingled with other moneys, and wrongfully invested in a stock of clothing, it was held the trust attached to the clothing, even as against general creditors (Hooley v. Gieve, 9 *Daly*, 104; 82 *N. Y.*, 625). In these cases, it was clear to be seen that the fund or some part of it was either actually in the bank account or clothing, or could be supposed to be.

In this case, the whole amount deposited had been drawn out, and, although subsequently made good, the account cannot be supposed to contain any part of the trust moneys. While it is true that when moneys are paid into bank they are indiscriminately mixed with the money of others there on deposit, and that the depositors probably will not again receive a dollar of the identical money deposited by him even if drawn within the hour, still in order to impose a trust on property purchased with money drawn from that bank account, it must be made to appear that the purchase was made with money which, except for the intermingling by the bank, would have been the iden-tical money deposited; otherwise we might be con-fronted with several resulting trusts upon the same fund of money or property purchased by it, which from the very nature of the doctrine creating such a trust could not occur.

The preference claimed is not allowed.