(17 App. Div. 212.)

ATLANTIC TRUST CO. v. KINDERHOOK & H. RY. CO. et al.

(Supreme Court, Appellate Division, Third Department. May 11, 1897.)

1. RAILROAD MORTGAGES — DISTRIBUTING PROCEEDS OF FORECLOSURE — UNISSUED BONDS.

   A fund to enable a railroad company to complete its road was advanced under an agreement that it should be paid by the issue of first mortgage bonds to an amount equal at least to the sums advanced; that of the stock issued 80 per cent. should be divided among the subscribers to the fund; that after the subscribers should have received the amounts actually paid in, and after payment of all debts and expenses, the balance remaining should be "divided pro rata among all the subscribers to the fund." Of the bonds executed under the agreement a surplus remained after payment of the subscribers to the fund. When any bonds were delivered the coupons then matured were cut off. *Held*, that the surplus of the bonds and the matured coupons which were cut off when bonds were delivered had not had an inception as obligations, and were not entitled to participate in the proceeds of a foreclosure sale under the mortgage.

2. SAME—INTEREST COUPONS.

   One of the subscribers to such fund pledged the bonds received by him as collateral security for a debt. When coupons thereon matured he took them up, for the purpose of protecting the credit of the railroad company, it being understood that they were to be retired. He paid a few of the coupons so taken up, and they were canceled; but he did not pay the others. *Held*, that none of such coupons were entitled to participate in the proceeds of the foreclosure sale under the mortgage, since those that were paid were canceled, and it was unreasonable to suppose that the pledgee, in surrendering the others without payment, intended to impair his security to that extent.

Appeal from special term, Columbia county.

Action by the Atlantic Trust Company against the Kinderhook & Hudson Railway Company and others to foreclose a mortgage. From a judgment confirming the referee's report, made after sale under judgment of foreclosure, as to the distribution of the proceeds of the sale, and of the securities to be issued by the corporation to be formed by the purchasers, pursuant to a reorganization agreement made by the holders of the bonds secured by the mortgage foreclosed, Edward D. O'Brien and Louis V. Booream, as receivers of the Moffett, Hodgkins & Clark Company, appeal. Modified.

After the sale of the mortgaged property under the judgment of foreclosure of the mortgage, given December 1, 1889, by the Kinderhook & Hudson Railroad Company to the plaintiff as trustee for the bondholders for $375,000, the special term confirmed the report of the referee appointed to ascertain the bondholders, and their respective distributive shares of the proceeds of the sale ($100,-000), and of the securities to be issued under the new corporation to be formed pursuant to the bondholders' agreement, whereby the appellants, the receivers of the Moffett, Hodgkins & Clark Company, an insolvent corporation, composed of the stockholders who, at the time of its incorporation, were members of the co-partnership of Moffett, Hodgkins & Clark, were excluded from participation in such proceeds as to the claims made by them. They appeal from the order and judgment entered thereon so excluding them.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Benjamin V. Harmon, for appellants.
Michael H. Cardozo, for respondent American Exch. Nat. Bank.
James F. Tracey, for plaintiff Atlantic Trust Co.

LANDON, J.   The firm of Moffett, Hodgkins & Clark and others entered into an agreement, August 21, 1889, with the said railroad company, to enable it to complete its railroad, whereby they agreed to advance to the railroad company, in installments, $250,-000, and the company agreed to pay such advances by issuing "bonds secured by a first mortgage upon its railroad and all its property, to an amount equal, at least, to the sum of the amount hereby agreed to be advanced, and also to issue capital stock of its company for such an amount as its directors may order, but not greater than they may legally create.   Such bonds, and not less than 80 per cent. of the stock, shall be divided among the subscribers hereto each month, as advances are made, pro rata, according to the amounts advanced."   The agreement also provided "that after the subscribers to the fund herein provided for shall receive the amounts they each have actually paid in, together with interest thereon, and after the payment of all debts and expenses incurred in the prosecution of the work, the balance remaining shall be divided pro rata amongst all the subscribers to the fund."   The subscribers to the agreement advanced to the railroad company $270,000, being the $250,000 subscribed, increased by a further call of 8 per centum.   Moffett, Hodgkins & Clark advanced $144,500.   For what sum the railroad company should execute its mortgage was not stated in the agreement, but it afterwards did execute it for $375,000, and made its bonds for a like amount, with interest coupons annexed thereto.   The railroad company placed all the bonds in the hands of one Camp, as custodian, and for proper distribution.   Camp issued the bonds to each subscriber as called for, to an amount equal to the amount paid by him, up to $252,000 in the aggregate;  the Moffett, Hodgkins & Clark Company receiving $144,500 in bonds.   The rest of the bonds, except $15,500, were held for the unpaid subscribers, or used by the railroad company as collateral;  $15,500 were never issued to any one.   When Camp delivered the bonds to each subscriber to the syndicate agreement, the Moffett, Hodgkins & Clark Company among others, or to a creditor as collateral, he cut therefrom the past-due coupons, and retained them.   The coupons which Camp thus cut off and retained amounted to $26,325.   The Moffett, Hodgkins & Clark Company pledged all of the bonds which it received to its creditors as collateral, and of these it pledged to the respondent the American Exchange National Bank $39,000 of the bonds of the railroad company, with coupons thereafter to mature;  and the bank surrendered the coupons of these bonds as they matured to the Moffett, Hodgkins & Clark Company, upon its request.   Neither the railroad company, nor the Moffett, Hodgkins & Clark Company or firm, paid any of the coupons;  but the latter company asked for and received them of the bank, the company's purpose being to

protect the credit of the railroad and the credit of the bonds as collateral, and its own credit, as the owners of the bonds, from the injury which the default in payment of the coupons would cause. Clark, through whom these coupons were thus taken up, was president of the railroad company, and member of the firm of Moffett, Hodgkins & Clark, and of the corporation successor of such firm, the Moffett, Hodgkins & Clark Company, and also its treasurer. The case states that, in like manner, the Moffett, Hodgkins & Clark Company pledged other railroad bonds to its other creditors, and took up the coupons, never paying anything upon them, except once, when the company paid the creditor the maturing coupons held by him, in the sum of $812, and took them up. The total coupons thus obtained by the Moffett, Hodgkins & Clark Company, and which came to the hands of its receivers, amount to $17,040, whereof $812 are the paid-up coupons.

The receivers claim: (1) That the $17,040 of coupons should be admitted to participation in the distribution of the proceeds of the sale of the mortgaged property; (2) that under the contract of August 21, 1889, they are entitled to have distributed to them a dividend upon their pro rata share of the $15,500 of bonds which were never issued; (3) and, in like manner, upon the $26,325 of the past-due coupons which Camp, the custodian, cut from all the bonds before he issued them.

It is a sufficient answer to the second and third claims that these bonds and coupons were never issued to anybody by the railroad company, and therefore never had an inception as obligations. The railroad company, by the agreement of August 29, 1889, did not undertake to issue any more bonds than would be necessary to complete and equip its railroad and pay its ·debts; but it did undertake to issue stock, and let the subscribers to the agreement have 80 per cent. of it, in addition to an amount of bonds equal to their respective advances; and it is no doubt with reference to the unissued 20 per cent. of stock that the provision in the contract respecting· the division of the balance among the subscribers refers. Besides, it does not appear that the debts of the railroad company are paid. Only the mortgagor, mortgagee, and lienors are parties to this action. The railroad company was not a party to any agreement among the subscribers to divide this surplus of bonds among themselves. As to the coupons to the amount of $812, the Moffett, Hodgkins & Clark Company paid them, to give further credit to the bonds. The company did not buy them. They were canceled on their face. As to the party receiving the payment the coupons cannot be revived. As to every other bondholder the payment still exists, and the company has no equity against him to insist that it shall not continue. Its remedy is against the railroad company; and thus these coupons must be excluded from participation in the distribution. Union Trust Co. v. Monticello & P. J. Ry. Co., 63 N. Y. 311; Hollister v. Stewart, 111 N. Y. 644–663, 19 N. E. 782; Wood v. Trust Co., 128 U. S. 416, 9 Sup. Ct. 131.

As to the balance of these coupons, $16,228, they were surrendered to the Moffett, Hodgkins & Clark Company by its several pledgees. How many of them the American Exchange National Bank surrendered does not appear. But, whatever the amount, it would be inequitable that they should now be used to deplete the amount distributable upon the bonds from which they were taken. The Moffett, Hodgkins & Clark Company retired them to protect and prolong the security afforded by such bonds; and for the pledgor who did so with that intent to use them to impair the security still remaining with the pledgee would be in violation of the contract implied by the transaction and the equities resulting from it. It certainly never entered the mind of the pledgee when it surrendered the coupons (and the pledgor did not intend that it should) that in parting with the coupons he was creating a charge against the principal of the bond. Cases above cited; Haven v. Depot Co., 109 Mass. 88; Railway Co. v. Gest, 34 Fed. 628. But we do not see how this transaction between the pledgor and a single pledgee can inure to the benefit of any other pledgee, not a party to it or influenced by it (Ketchum v. Duncan, 96 U. S. 671), nor how the American Exchange National Bank can take any benefit from the like transaction between the Moffett, Hodgkins & Clark Company and any other pledgee, in the absence of evidence that the bank was influenced by it. The coupons in the hands of the receivers are still the unpaid obligations of the railroad company, and they may insist upon their payment against every other holder of the railroad bonds than those who were led to take them from the Moffett, Hodgkins & Clark Company, or to extend time of payment, upon the company's assurance, express or implied, that it had retired, or would retire, such coupons as they matured; and it does not appear that any creditor was influenced by any other transaction with the company than his own. It is conceivable that, if any of the coupons had gone to protest, all of the Moffett, Hodgkins & Clark Company's pledgees would have taken alarm, and would have refused to extend further credit without further security. But this is too conjectural to support a finding of fact to such effect. As the record stands, we have no sufficient evidence upon which to extend to any other pledgee of the Moffett, Hodgkins & Clark Company the like relief extended to the American Exchange National Bank. As the appellants, the receivers of the Moffett, Hodgkins & Clark Company, are entitled to participate in the dividend with respect to $16,228 of their coupons, the bondholders should, in the new distribution, be permitted to add their past-due coupons to their bonds. We understand that this was not done in the distribution under review, because, all the coupons being excluded, the result would be about the same as if the coupons had been added to the bonds.

The judgment and order should be modified by admitting the appellants' coupons to the amount of $16,228 to participation in the distribution, except as against the American Exchange National Bank in respect to the coupons surrendered by the bank

to the Moffett, Hodgkins & Clark Company, with costs to the appellants out of the fund; and the case is sent back to the referee for a further report. The method of computation accompanies this opinion. All concur.

Method of computation: As the bank is entitled to one rate per cent. against the Moffett, Hodgkins & Clark Company, and a smaller rate against the other distributees, first compute the amount due all the distributees as if all were equal. Then compute the amount due the bank at the rate allowed the bank against the Moffett, Hodgkins & Clark Company. Find the difference between the two dividends thus computed upon the bank's claim. Take this difference from the Moffett, Hodgkins & Clark Company's dividend, thus reducing the Moffett, Hodgkins & Clark Company's dividend by the sum that the bank's dividend is increased. Thus, suppose the sum to be distributed is $100,000, and the total claims $484,000; then rate per cent. would be $100/484$ per cent. Suppose the bank returned to the Moffett, Hodgkins & Clark Company $4,000 of their $16,230 of coupons; then the bank's rate against the Moffett, Hodgkins & Clark Company would be 100,000/480,000, or $100/480$ per cent. Say the bank claims $40,000; then the bank's actual dividend is $100/480$ per cent. thereof, or $8,333.33; and $100/484$ per cent. is $8,264.46,—difference, $68.87, which take from the Moffett, Hodgkins & Clark Company's dividend, computed at $100/484$ per cent.