WILLIAM R. STRICKLAND, Respondent, *v.* FRANCIS P. MAGOUN and
EDWARD V. VAN DUZER, Individually and as Surviving Partners
of the Late Copartnership Firm of MAGOUN BROTHERS & Co.,
Defendants, Impleaded with JAMES M. QUIGLEY, Appellant.

Second Department, April 19, 1907.

**Principal and agent — conversion of collateral by broker — when assignee
of collateral liable to owner.**

When a broker purchases stock for a customer upon margin the legal title vests
in the customer. The relation of debtor and creditor exists between customer
and broker for the unpaid balance of the purchase money, and the stock in the
possession of the broker is deemed pledged as security for such balance. It is
not necessary for the broker to retain in his possession the identical stock pur-
chased, but he must have in possession or control an amount of stock equal to
that purchased which he can deliver to the customer.

The unauthorized sale of such stock by the broker, or its unauthorized
rehypothecation as collateral for a loan to him is a conversion for which the
broker is liable.

While such rehypothecation may be unauthorized, so far as the broker is con-
cerned, yet his pledgee may obtain a good title thereto, provided such title is
founded upon a present and valuable consideration, and such pledgee acts in
good faith, and without knowledge of the claims of the true owner.

After such rehypothecation of the stock, a third person who is a creditor of the
broker, and who receives such stock from the pledgee thereof, under such cir-
cumstances that he does not succeed to his rights, either as assignee or by
subrogation, and who seeks to hold the same as collateral security for a note
of the broker given for such antecedent indebtedness, with knowledge that
such stock belongs to others and does not belong to said broker, does not
obtain good title thereto, and upon refusal to deliver to the owner thereof is
liable for conversion.

APPEAL by the defendant, James M. Quigley, from a judgment
of the Supreme Court in favor of the plaintiff, entered in the office
of the clerk of the county of Nassau on the 27th day of July, 1906,
upon the decision of the court, rendered after a trial at the Nassau
Trial Term, the jury having been discharged.

*Alfred S. Brown*, for the appellant.

*Romaine H. Crosby*, for the respondent.

Judgment affirmed upon the opinion of Mr. Justice BURR at Special* Term, without costs.

WOODWARD, JENKS, GAYNOR and RICH, JJ., concurred.

The following is the opinion delivered at Trial Term:

BURR, J.:

Prior to October 17, 1901, the defendants Francis P. Magoun and Edward V. Van Duzer, together with one George B. Magoun, were copartners, carrying on business as stockbrokers under the name of Magoun Brothers & Co. On that date, at the request of Camillus G. Kidder, plaintiff's assignor, they purchased for his account on a margin deposited by him with them, 100 shares of the common capital stock of the United States Rubber Company. On December 16, 1902, the firm of Magoun Brothers & Co. was dissolved by the death of George B. Magoun. Up to that date the account of Kidder had been an open one. On November 29, 1902, the firm had rendered him a statement showing a balance due to them of $444.80, and that they held the said 100 shares of rubber stock as collateral security therefor. After George B. Magoun's death and between that date and September 25, 1903, Kidder paid to the surviving member of the firm $130 on account of his indebtedness. No other change took place in the account down to October 20, 1905. On that date Kidder tendered the balance then due to the surviving members of the said firm and demanded delivery of his stock, which was refused. Prior to the date of George B. Magoun's death the firm of Magoun Brothers & Co. had hypothecated to the firm of F. D. Winslow & Co. the 100 shares of rubber stock purchased on Kidder's account with a large amount of other securities as collateral security for a call loan to them of $120,000. At the time of George B. Magoun's death the firm of Magoun Brothers & Co. was insolvent. Its liabilities greatly exceeded its assets. This fact was not, however, generally known. It did not have in its name or under its control and ready for delivery the shares of stock purchased for Kidder, nor an equal amount of other shares of the same stock. It has never had since that date. On the 2d day of January, 1903, the firm of Winslow & Co. called its

loan to the firm of Magoun Brothers & Co. The firm was unable to pay. The defendant James M. Quigley was one of its heaviest creditors. From the date of George B. Magoun's death he had been thoroughly acquainted with the condition of its affairs, and had taken an active part in assisting in the liquidation thereof. While he may have had hopes that through careful management it would eventually be able to pay its creditors, he knew that it could not at that time discharge its obligations. While he may not have known to whom the stocks hypothecated as security for the Winslow loan belonged, he must have known that they did not belong to Magoun Brothers & Co., but were the property of various customers of theirs, held by the firm as security for the balances due from them. When the Winslow loan was called, Quigley and the surviving members of Magoun Brothers & Co. entered into an arrangement by which the best of the securities held by Winslow & Co. were to be hypothecated with various banks for the largest sum which they would loan thereon, such securities to be collateral to the firm note. The most that could be raised in that way was $70,000.

This left $50,000 still due Winslow & Co. This sum the defendant Quigley advanced. The loan of Winslow & Co. was paid and the securities delivered up. On the same day, January 2, 1903, Quigley received from Francis P. Magoun the demand note of Magoun Brothers & Co. for $50,000, together with such of the securities which had been hypothecated with Winslow & Co. as had not been rehypothecated with the banks as security for the $70,000 loan above referred to. Included in this was 130 shares of rubber stock. The books of Magoun Brothers & Co. showed that they were carrying 130 shares of rubber stock for their customers, 100 shares of which they were carrying for Kidder. The note of $50,000 given to Quigley on January 2, 1903, has not been paid. On October 30, 1905, Kidder tendered to the defendant Quigley the balance due on his account with Magoun Brothers & Co. and demanded the delivery of the stock, which was refused. Thereafter he assigned the stock and any cause of action thereon to the plaintiff, who brings this action against the surviving members of Magoun Brothers & Co. and against Quigley for conversion. That the plaintiff can succeed against the defendants Magoun and Van

Duzer is unquestioned. When a broker purchases for a customer stock upon a margin, the legal title to the stock vests in the customer. The relation of debtor and creditor existing between the customer and broker as to the unpaid balance of the purchase money, and the stock being in the possession of the broker, it is deemed pledged to him as security for such unpaid balance. The relation of pledgor and pledgee, therefore, arises with this qualification to the usual rule applicable to such relation. It is not necessary that the broker should retain in his possession the identical stock purchased on his customer's order. It is sufficient if he has in his possession, or under his control, an amount of the stock in question equal to that purchased, which he can deliver to the customer when the account is closed. (*Caswell* v. *Putnam*, 120 N. Y. 153; *Douglas* v. *Carpenter*, 17 App. Div. 329.) An unauthorized sale or an unauthorized loan of the stock is a conversion thereof. If the broker, for his own benefit, mingles his customer's stock with other securities and rehypothecates them for a greater amount than the amount of the customer's indebtedness to him, not having under his control a like amount of stock with which delivery can be made if demanded, it is an unauthorized loan and he is guilty of conversion. (*Douglas* v. *Carpenter*, supra; *Rothschild* v. *Allen*, 90 App. Div. 233.) That is what Magoun Brothers & Co. did. Whether at the time of the original loan from Winslow & Co. and the hypothecation, among other securities, of 130 shares of rubber stock as collateral therefor, the firm had under their control another block of said stock from which delivery could have been made to Kidder, it is certain that on the 2d day of January, 1903, when the transaction with Quigley took place, they did not have, nor have they had since. Is the defendant Quigley likewise guilty of conversion? A pledge of stock may be unauthorized so far as the broker is concerned, and yet the pledgee obtain a good title thereto. (*McNeil* v. *Tenth National Bank*, 46 N. Y. 325.) But such title must be founded upon a present and a valuable consideration, and the pledgee must have acted in good faith, and without knowledge of the claims of the true owner. (*Adams* v. *Bowerman*, 109 N. Y. 23; *Porter* v. *Parks*, 49 id. 564; *Perth Amboy M. L. Assn.* v. *Chapman*, 80 App. Div. 556; affd. on opinion below, 178 N. Y. 558; *McNeil* v. *Tenth National Bank*, supra.) For that reason, so far

as appears in this case, Winslow & Co. could have held the rubber stock hypothecated to them as security for their loan to Magoun Brothers & Co. even as against Kidder, the real owner thereof. For the same reason, Quigley, unless in some way he has succeeded to the rights of Winslow & Co. cannot, even though the debt of Magoun Brothers & Co. to him is still unpaid. He had notice at the time that he received the security that it did not belong to Magoun Brothers & Co. and that they had no authority to pledge the same for their personal benefit. The fact that he did not know to which one of the customers of the firm it did belong would make no difference. It was enough that he knew that it did not belong to the firm. (*Perth Amboy M. L. Assn.* v. *Chapman, supra.*) Has he succeeded to the rights of Winslow & Co. ? He has not succeeded to such rights as their assignee. The transaction through which the rubber stock came into his hands was one between him and the surviving members of the firm of Magoun Brothers & Co. It was upon a new contract made with them, upon entirely different terms from their contract with Winslow & Co. (*Lancey* v. *Clark*, 64 N. Y. 209.) Neither is he in a position to claim equitable subrogation to their rights. It may be conceded that the right of subrogation does not necessarily rest upon a contract either expressed or implied. (*Mutual Life Ins. Co.* v. *Forty-second St. R. R. Co.*, 74 Hun, 505; *Pease* v. *Egan*, 131 N. Y. 262; *Gans* v. *Thieme*, 93 id. 225; *Cole* v. *Malcolm*, 66 id. 363.) It may rest " on the basis of mere equity and benevolence " and be resorted to for the purpose of doing justice between the parties. But being a doctrine of purely equitable origin and nature, its operation is always controlled by equitable principles. It is, therefore, never enforced so as to defeat or interfere with the superior or equal equities of third persons. (4 Pom. Eq. Juris. [3d ed.] § 1419, note; *Union Trust Co.* v. *M. & P. J. R. Co.*, 63 N. Y. 311; *Atlantic Trust Co.* v. *K. & H. R. Co.*, 17 App. Div. 212, 216.) Just here is the fatal weakness of the defendant Quigley's position. He did not pay nor furnish the means to pay the entire debt of Winslow & Co. He did not take into his possession all of the securities which they held as collateral for the payment thereof. He was not in a position, therefore, if Kidder, in order to free his own stock from the lien of the pledgee, had desired to pay the

entire debt of Winslow & Co., receiving all of the securities which they held, to have enabled him to do so. But that is not all. Quigley was a party to an arrangement by which the best of the Winslow securities were diverted to and pledged as collateral to other creditors. The less valuable securities, including the rubber stock, were taken by him as security for the loan which he made. The effect of this was to increase the lien and burden upon the said stock. The margin between its value and the lien upon it in his hands was less than when all of the securities, good, bad and indifferent, were in Winslow's hands. But, by his acts, Kidder's equities were still further prejudiced. After the securities came into his hands Quigley withdrew from them certain stocks which he claimed to be his own, imposing a still further burden of indebtedness upon the remaining stocks, including the rubber stock. Under such circumstances he cannot have subrogation. Before the transaction of January 2, 1903, his equities and those of Kidder, both being creditors of Magoun Brothers & Co., were equal. To permit him to be subrogated under the circumstances to the rights of Winslow & Co. would be to sacrifice Kidder's rights to his.

As between plaintiff and the defendants Magoun and Van Duzer the date of the conversion was October 20, 1905. As between plaintiff and the defendant Quigley it was October 30, 1905, these being the respective dates of the demand upon them, and their refusal to deliver the stocks. (Jones Pledges [2d ed.], 571.) I deem the 20th of November, 1905, a reasonable time to allow the plaintiff to replace the stock. Between the 20th day of October, 1905, and the 20th day of November, 1905, the stock was quoted steadily at fifty-seven.

The plaintiff is, therefore, entitled to judgment against all of the defendants for $5,700, less $395, the amount remaining unpaid on the stock, to wit, $5,305, with interest from the 20th day of November, 1905.