William T. Collins, S.
Dreyfus & Co., one of the respondents in a discovery proceeding, moves to dismiss the amended petition insofar as it seeks relief against it, on the ground (1) that it fails to show that petitioner is entitled to the delivery of any property and (2) that the Surrogate’s Court lacks jurisdiction to determine and enforce the alleged rights asserted therein.
The original petition by the ancillary administrator c. t. a. followed closely the terms of section 205 of the Surrogate’s Court Act. The respondents were four named individuals and two corporations. The petition alleged that in 1947 the decedent opened brokerage accounts with Dreyfus & Co. in his name and in the name of a “ former agent that the respondent received from the decedent the sum of $67,443.74 and additional property; that the respondent has not accounted for all of the property so deposited in the brokerage accounts; and that it withholds money and property which should be turned over to the personal representative of the decedent. It prayed for an inquiry and for the delivery of property to petitioner “if it is in [respondents’] possession or control.” No party filed any answer to that petition. Comprehensive examinations were held and many exhibits were produced. Dreyfus & Co. was examined through the person in charge of its bookkeeping department. The inquisitorial phase of the proceeding was then completed.
Thereafter, the ancillary administrator c. t. a. filed an “ Amended Petition ” which is based largely on the facts which the various examinations elicited, together with inferences which the petitioner draws from the facts. The amended petition eliminated three of the individuals and one of the corporations named in the original petition and it added three new corporations. There is no connection between the other respondents and Dreyfus & Co., and the proceeding against the latter is in effect completely separate from the demand against the others. The petition, however, does not segregate the allegations relating to one or the other but attempts to set forth all of the activities of all of the respondents with respect to the total sum of money originally held by the decedent when he visited this country in 1947.
The amended petition sets forth the following facts relating to Dreyfus & Co.: Prior to September, 1947, the decedent had on deposit in a blocked account with a banking institution the sum of $88,169.10 and he owned four shares of Radio Corporation of America, 29 shares of General Electric Company and bonds of the Republic of Mexico. Under a Treasury license the assets were “ unfrozen ” and of the sum on deposit in the bank, *476 $67,443.74 was paid to Dreyfus & Co., and credited to the account of the decedent. Upon the instructions of the decedent, Dreyfus & Co. opened a further account in the name of Hans Hurlimann, a resident of Switzerland. The decedent instructed Dreyfus & Co. to credit the account in the name of Hurlimann with the sum of $22,240.41 and later with a further sum of $9,927.23. These sums were used to purchase securities for the account that was in the name of Hurlimann. “ Dreyfus & Co. knew since the opening of the account and at all times thereafter that the securities in the account of Hans Hurlimann were the property of Gustav Kadar. * * * Dreyfus & Co. requested Gustav Kadar to give it instructions as to the securities purchased in the account of Hans Hurlimann.” (The petition does not say whether or not any such instructions were given, and, if so, what they were.) The shares of stock and the bonds owned by the decedent were also turned over to Dreyfus & Co. At no time between September, 1947 and the death of the decedent (which occurred on March 11, 1948) did Dreyfus & Co. receive any instructions from Mr. Hurlimann as to the operation of the account in his name, and no activities were performed by him even after the death of the decedent until the year 1952. Dreyfus & Co. was informed in 1948 of the death of the decedent and was advised in 1952 by Mr. Hurlimann that the decedent had died. In that year Dreyfus & Co. paid to Hurlimann $9,067.80, to another individual $500, and it transferred to a Swiss bank the sums of $520.94 and $430.80. These distributions total $10,519.54. Upon the appointment of the public administrator as temporary administrator of the estate of the decedent, Dreyfus & Co. delivered to the public administrator only a portion of the assets owned by the decedent and .then in its custody (the amount not being stated in the petition), and it failed to reveal to him that it had additional assets of the decedent. In 1953, subsequent to the appointment of the temporary administrator, Dreyfus & Co., on instructions of Hurlimann, paid $1,020 to two individuals. After the appointment of petitioner as ancillary administrator c. t. a., demand was made for the additional assets, delivery was refused and petitioner instituted an action in the Supreme Court. The sheriff of the City of Hew York seized the assets in the name of Hurlimann and paid petitioner $5,788.67, withholding poundage of $174.07. Thereafter, Dreyfus & Co., turned over an additional $12.50 to petitioner. In February, 1955 securities in the name of Hurlimann were sold by Dreyfus & Co., for $5,779.67. The petition does not state whether or not the proceeds were dis *477 bursed or are still held by the brokers, but it would seem that these proceeds have been recovered.
The amended petition alleges that Dreyfus & Co. “ caused damage to the estate of Gustav Kadar in the amount of $11,933.36: (a) by disbursing without authority more than four years after the death of Gustav Kadar and immediately prior to the appointment of the Public Administrator as temporary administrator a total of $10,519.54 * * *; (b) by disbursing without authority more than four years after the death of Gustav Kadar and after the appointment of the Public Administrator a total of $1,020.00 * * #; (c) by requiring the estate to incur a charge of $7.65 for Sheriff fees, $174.07 for Sheriff’s poundage, $208.10 cost of publication in two newspapers and a $5.00 index fee in the Supreme Court, New York County, pertaining to the proceeding described in pars, thirty-seven and thirty-eight * * The amended petition demands that Dreyfus & Co. account and pay over to petitioner the sums totalling $11,934.36, together with profits, interest and income thereon, and that the court “make a determination which a court of equity might decree in following trust property or funds. ’ ’
That part of the petition which seeks to recover the costs, expenses and disbursements of the Supreme Court action is dismissed. These items are so clearly outside the scope of a discovery proceeding that no further comment thereon is warranted.
If we look only at the allegation that the respondent ‘1 caused damage to the estate * * * in the amount of $11,933.36 ”, the other items might appear at first glance to fall outside the limits of a discovery proceeding. The court would not be justified, however, in ignoring other allegations of the petition, taking these' words from their context and giving to them a meaning which they cannot have when read in their setting. In other words, if the amended petition sought to compel the delivery of ‘ ‘ money or other personal property, or the * * # value thereof ” (§ 205), and the property had been “ diverted or disposed of ” (§ 206), the petitioner would be entitled to a decree directing “ payment of the * * # value of such property ” (§ 206), and the fact that petitioner may have used the word “ damage ” would not destroy his right to payment as provided in section 206. His remedy depends upon the entire substance of his plea; not upon merely a single word therein.
A careful reading of this petition, however, reveals so many hiatuses in the account of the transactions and so much ambigú *478 ity in the charges leveled against respondent that respondent can neither fairly answer it nor prepare for a hearing. The original petition, in the usual form of a discovery petition, alleged that the respondent had received $67,443.74 belonging to the decedent, and had failed to account for it and to deliver all of it to the fiduciary. The amended petition, in much more extended allegations, some of which are developed in great detail, charge this respondent with only $11,539.54. If the intent of the petitioner were to charge respondent with holding a portion of the funds received from the decedent and disposing of that portion after the.decedent’s death without the consent of his personal representative, there would be no real difficulty. However, the petitioner does not allege the continued possession of the decedent’s funds. On the contrary, he alleges that these funds were transferred on the direct instructions of the decedent to an account in the name of another person and that the balance of the fund was disbursed apparently upon the instructions of the person in whose name the account was maintained.
To say that the decedent transferred money to an account in the name of a third person and that the broker disbursed the funds in accordance with the direction of that third person is no support for a charge that the broker wrongfully disbursed the decedent’s funds. Nor is this defect cured by an allegation that the broker “ knew that the securities [purchased with the money] were the property of ” the decedent. That is a mere conclusion of law. The amended petition is, at this point, more significant for its silence than for its statements of fact. Are we to assume that the Hurlimann account was in fact the decedent’s own account in the name of an agent or dummy and that the decedent was to retain ownership of the moneys transferred and of all securities purchased with them, or, on the other hand, are we to assume that the funds were in fact transferred to Hurlimann under an arrangement with him that he was to purchase securities in the name and for the account of the decedent? The petition says nothing as to any arrangement between the decedent and the brokers, or between the decedent and Hurlimann, respecting the ownership and management of the account, the securities or the funds. It is completely silent as to the reason for the transfers by the decedent and the results which the parties intended to flow from such transfers. Other statements in the amended petition negate the idea that Hurlimann was an agent for the decedent and that opening the account in his name was for convenience of management. Hurlimann, like the decedent, was a nonresident alien and was not available for personal supervision of the account. In point *479 of fact it is conceded that Hurlimann never gave any instruction with respect to the account during the decedent’s lifetime. There is no justification for assuming that the Hurlimann account was merely a dummy account operated by the decedent. The petition alleges that Hurlimann was a Swiss national, practicing law in Zurich and that the decedent gave instructions to open the account in the name of this real person. It is apparent, therefore, that we cannot fairly infer an intent to allege that the funds transferred by the decedent were to remain in his ownership or that the securities purchased were to be held by the broker for the account of the decedent. Indeed, there seems to be a careful avoidance of any such clear-cut allegation.
Perhaps the petition seeks to charge the brokers with wrongful participation in diversion of estate funds by others (see Whiting v. Hudson Trust Co., 234 N. Y. 394, 403). In that case the proceeding would not be one to recover money or specific personal property or its value (cf. Matter of Trevor, 309 N. Y. 389).
The respondent is thus placed in a position where it cannot answer the charges against it because it cannot determine precisely what it is charged with doing or failing to do. The petition must be more definite and certain in order to give the respondent a reasonable opportunity to meet the issues, if any, presented by the petitioner.
The motion to dismiss the petition is granted with leave to the petitioner, however, to file a new petition within 20 days, setting forth the ultimate facts on which his demand against Dreyfus & Co. is based, so as to give notice to the respondent of the charge which it must meet and so as to indicate that the proceeding is within the scope of sections 205 and 206 of the Surrogate’s Court Act.
Submit order on notice accordingly.