William T. Collins, S.
The petitioner instituted a proceeding to discover property allegedly withheld by respondent Dreyfus & Company and others. Without filing answer, the respondents appeared for examination. Thereafter, by amended petition, the ancillary administrator sought an order to compel Dreyfus & Company to deliver certain assets to him. That petition was dismissed, with leave to file a new petition (3 Misc 2d 474). Thereupon a second amended petition was filed, praying for an order compelling Dreyfus & Company to turn over to petitioner property allegedly wrongfully withheld, or the value thereof. The present motion is to dismiss the second amended petition in the discovery proceeding on the ground that (1) it fails to show that petitioner is entitled to a decree for delivery by respondent Dreyfus & Company of any property of the decedent, and (2) this court lacks jurisdiction of the subject matter of the proceeding.
The first part of the motion is presumably made under subdivision 4 of rule 106 of the Buies of Civil Practice. The second part seems to be based on subdivision 1 of rule 107. The difference between the two is that a motion under the first-mentioned rule challenges the pleading for alleged defects appearing on its face, while the latter rule tests the pleading with facts raised in supporting affidavits. The papers on the present motion incorporate affidavits, they refer to other papers heretofore filed and they rely upon background material for which no authority is cited. No attempt is made to specify the precise nature of the motion or the portions to which the extrinsic facts should be applied. An opponent should be apprised whether a party is moving under rules 106, 107 or 113, so that he can meet the challenge squarely. The petitioner has experienced some difficulty in determining whether issues of law or fact are raised on this motion. However, the nature of the argument in support of the motion makes it fairly clear that the first part of the motion is addressed to the face of the petition and the second part to matters set forth in the affidavits. The court will so treat the motion.
The amended petition alleges the following material facts in support of its demand for a turnover of the property or its *482 value: The decedent was a Hungarian citizen who owned substantial assets in this country. He came here in August, 1947, remaining here until October of that year. On September 10, 1947 the decedent delivered to Dreyfus & Company, a firm of brokers, the sum of $67,443.74, as well as some shares of stock and bonds of minor value. The decedent’s assets in this country had been blocked by the Federal Government and released to him shortly before he entrusted the assets to respondent. To avoid the possibility of future restrictions by the United States or control by the Hungarian Government, the decedent wished to keep the assets in this country but not in his own name, and to carry out this purpose the decedent and the respondent agreed on September 10, 1947 “ to have the assets of Gustav Kadar, not otherwise disposed of, carried with Dreyfus & Go. designated with a name other than that of Gustav Kadar, to wit: that of Hans Hurlimann. ” Hurlimann was a Swiss attorney who had represented the decedent, and he agreed with the decedent and the respondent to the use of his name on an account with the respondent which contained assets of the decedent. He so advised the decedent and the respondent. The decedent returned to Hungary in October, 1947 and died there on March 11, 1948. “ [A]fter the death of Gustav Kadar respondent Dreyfus & Co. was advised and was put on notice by Hans Hurlimann and others that the property in the ‘ Hans Hurlimann ’ account was not the property of Hans Hurlimann but the property of Gustav Kadar. ”
Of the funds originally delivered to the respondent, the sum of $36,110.10 was paid out during the decedent’s lifetime and presumably with his consent. There is no issue in respect of the respondent’s disposal of such moneys. The balance remained in the possession of the respondent, though it had been transferred from the original account in the name of the decedent to the account in the name of Hurlimann. Despite the transfer on the books of the respondent from the account in one name to an account in the other, there was no sale, loan or gift of the property to Hurlimann, and all of the assets entrusted to the respondent remained the property of the decedent. The respondent Dreyfus & Company agreed that no funds other than the decedent’s were to be kept in the “ Hans Hurlimann ” account.
After the decedent’s death, the respondent turned over to the temporary administrator certain assets of the decedent and it subsequently delivered other assets to the petitioner herein as ancillary administrator c. t. a. The respondent withheld from *483 the temporary administrator any knowledge that it had in its possession additional property received from the decedent, and it failed to reveal information in respect of that property. During the years 1952 and 1953, without authority from or the consent of the personal representative of the decedent, the respondent paid over sums totalling $11,539.54 to others. The ancillary administrator c. t. a. demands these funds, together with any increment thereon.
We thus have in its simplest form the most usual basis for the discovery proceeding: delivery of property by the decedent to an agent; the return by the agent of only a part of the property entrusted to him; demand by the personal representative for the balance o'f the property. While the respondent concedes that we must assume the truth of all “ facts well pleaded ”, it pretends to find many omissions in the petition and it attempts to supply them through its affidavits. This is not an action to recover damages for breach of contract. It is a proceeding to recover possession of personal property or its value. The petitioner has corrected the defects heretofore pointed out by the court. The petition alleges that the decedent “ entrusted ” a sum of money to the respondent brokers, that the funds were retained for the decedent in an account under a particular name, that the respondent continued possession of the property until the death of the decedent, that it returned only a portion of the assets to his estate, and that without the authority or consent of the decedents’s personal representative, it diverted and disposed of property by paying- it to others. The allegation that the property was “ diverted and disposed of ” does not destroy the petitioner’s remedy under sections 205 and 206 of the Surrogate’s Court Act. The statute plainly says that ‘ ‘ if the property shall have been diverted or disposed of, the decree may direct payment of the * # * value of such property ” (§ 206; see, also, Matter of Kiamie, 309 N. Y. 325).
If there is an agreement between the parties different in terms than set forth in the petition, and if such agreement permits the respondent to dispose of the property after the decedent’s death on instructions from others, the respondent may allege and prove such matters on the hearing. It cannot be said that the petitioner has failed to set forth grounds for relief because his version of the terms for holding the property does not agree with the respondent’s view o'f it.
A letter annexed to the petition indicates that some of the cash was converted into securities by direction of the decedent. *484 Probably, as stated by the respondent, other changes were made in the account through duly authorized purchases and sales. Petitioner’s right to recover does not depend upon continued physical possession of the identical asset in the same form as when it was delivered to the broker. When the courts speak of discovery as a proceeding to reach ‘ ‘ specific personal property or money ” (Matter of Trevor, 309 N. Y. 389, 392), they do not mean that discovery will fail if the form of the property is altered while it is in the possession of the respondent. What is meant is that the aim of the proceeding is to obtain possession of specific property or money, and that such a proceeding cannot be used to recover money damages for a wrong done to the decedent. “ If the genesis of the obligation of the respondent was predicated on the possession of an asset, jurisdiction inheres.” (Matter of Lusher, 159 Misc. 387, 389; Matter of Trevor, supra.) Even though moneys delivered to the respondent were thereafter invested in securities, the respondent was obligated, according to the petitioner’s claim, to return the securities to the decedent. The genesis of its obligation is predicated on the possession of the decedent’s property.
It is true that the petition does not allege that the respondent made the disputed disbursements of funds after it had been explicitly informed of the decedent’s death. The petition, however, is based upon an alleged agreement of the parties whereby the assets remained in the ownership of the decedent and were placed in the name of another only for their protection. The respondent assumes that Hurlimann was to have complete control of the account. The petitioner, however, does not allege or concede Hurlimann’s authority to deal with the assets as owner or as agent. The petition treats Hurlimann only as the name used for the account which embraced the decedent’s assets. It is not essential that the petitioner prove that the respondent had actual knowledge of the decedent’s death before making the payments. (Restatement, Agency, § 120, comment b.) The petitioner must, of course, at the hearing herein prove the allegations of his petition, but on this motion we assume the truth of the allegations.
The motion to dismiss the petition for failure to set forth facts sufficient to entitle petitioner to a decree in discovery, is denied.
The second part of the respondent’s motion charges lack of jurisdiction of the subject matter of the proceeding. The respondent contends that the challenged payments to others were in fact made from dividends accumulated to the credit of *485 the account; that the respective “ dividends ” did not represent specific funds collected on particular securities in the name of the customer, but were merely sums credited by the respondent on its books as a prorata share of a sum collected as a dividend for a number of customers. It argues that this book entry represented a debt owned by the broker to the owner of the account, and the petitioner is therefore attempting to collect a common debt by means of a discovery proceding. The respondent’s argument springs from its assertion that all of the securities purchased for the customer were held in “ street names ” and that dividends collected on such securities so held are not segregated or earmarked for any account. The broker collects a sum as a dividend on all of the shares of that corporation held in a particular name, and it thereupon becomes liable to the owners of the respective accounts for their prorata shares of the dividend, but it does not set apart or earmark any particular funds for such accounts. The respondent argues that the dividends so allocated on its book were merely debts o'f the broker to the customer. It contends that the relationship between it and the decedent was merely a debtor-creditor relationship.
The respondent has thus divided the property held by it into two different classes: (a) principal assets purchased for the decedent; (b) income allocated to the decedent’s account. It has determined for itself that all funds allegedly diverted by it came from income collected by it. Even if we assume that the challenged payments came from dividends, that fact does not essentially change the nature of the customer’s claim. The conceded fact is that the respondent actually allocated particular sums of money to the account. It so allocated them because the owner o'f the account was the owner of the securities and Avas entitled to all dividends thereon. The dividends so allocated represented property held for the owner of the account. By its allocation of the dividends, it represented that it was holding such funds for its customer. It cannot now say that the relationship between them was merely that of debtor and creditor.
There is a difference between the obligation of a bank to repay to its depositor money credited on its accounts as due the depositor and the obligation of a broker to repay moneys entrusted to him by his customer. The relationship between bank and depositor has been held to be a debtor-creditor relationship (see Matter of Trevor, 309 N. Y. 389, supra). The relationship between a stock broker and his customer is that of *486 principal and agent (Restatement, Agency, § 1, comment d; Leo v. McCormack, 186 N. Y. 330, 332; Meyer, Law of Stock Brokers and Stock Exchanges, p. 249 et seq.) though there may also exist a debtor-creditor relationship arising from a loan by one to the other or from other dealings with them. An agreement between a broker and his customer to buy and carry stocks is not merely an agreement to procure and furnish the shares when "required, but rather an engagement actually to purchase and hold the shares ordered. (Taussig v. Hart, 58 N. Y. 425, 430.) The legal title to the stock purchased by the broker vests in the principal. (Strickland v. Magoun, 119 App. Div. 113, 116, affd. 190 N. Y. 545; Le Marchant v. Moore, 150 N. Y. 209, 216; Keys v. Leopold, 241 N. Y. 189, 192.) Though a broker may sometimes be referred to as having the status of a fiduciary (Keys v. Leopold, supra, p. 193), he is not a trustee in the strict sense of the word, “but a quasi trustee, of the same character as any agent to whom money or other property is entrusted by his principal for the purposes of the agency.” (Meyer, Law of Stock Brokers and Stock Exchanges, p. 252.)
Certain trustees have statutory authority for registering trust assets in the names of nominees (Personal Property Law, § 25; Surrogate’s Ct. Act, § 231), but there can be no doubt that registration in such form does not change a trustee into a mere debtor. Indeed the cited statutes plainly regard the assets as owned by the trust estate. The dividends in such cases are collected by the trustee in his fiduciary status. A stock broker who collects a single dividend check for a number of customers for whom he holds shares of the corporate stock, acts in a fiduciary capacity for the various customers. Whatever may be their rights and remedies when the proceeds of the check remain in a lump sum in the broker’s hands, each one certainly becomes owner of the dividend on his shares when the broker actually allocates the lump sum to the various owners of the stock. When the respondent allocated dividends to the decedent’s account, it held specific funds which it conceded were owned by the decedent. It did not merely become the debtor of the decedent; it held the moneys as his agent.
A discovery proceeding cannot be used to enforce mere contract obligations of the respondent, but jurisdiction in a discovery proceeding is not lost upon mere proof that the respondent held the decedent’s property under an agreement, express or implied, to return it to the decedent. (See Matter of Patenotre, N. Y. L. J., May 16, 1956, p. 1, col. 2.) A discovery *487 proceeding may properly be maintained to recover property entrusted to an agent who was authorized to make sales and reinvestment of the proceeds. (Matter of Stern, 306 N. Y. 862; Matter of Patenotre, supra; Matter of Rubin, 168 Misc. 81; Matter of Fraley, 129 Misc. 803.)
The motion to dismiss the petition is in all respects denied. The respondent may file its answer within 10 days from the date of the order to be entered herein.
Submit order on notice accordingly.