In the Matter of the Application of the CHEMICAL BANK AND TRUST COMPANY, as Temporary Administrator, etc., of PERCIVAL THOMAS, Deceased, Respondent, for the Discovery of Property Withheld.

CHARLES M. HICKS, Appellant.

First Department, May 20, 1932.

*Finis E. Montgomery*, for the appellant.

*David M. Neuberger*, for the respondent.

McAvoy, J.   This discovery proceeding was begun by an order dated February 27, 1930, requiring Kathryn T. Hicks, a daughter of the deceased, Charles M. Hicks, her husband, and Jack Hicks, her son, to make discovery, under oath, of the money and property alleged in the petition annexed thereto to be in their possession.

On the return day of the order, Kathryn T. Hicks, one of the respondents, filed an answer claiming title to a Rolls Royce automobile and to household furniture, etc., claimed to be wrongfully withheld by her.   That proceeding was tried before one of the surrogates and resulted in a dismissal of the petition.

Charles M. Hicks and Jack Hicks, on the return day of the order, denied that they had any property belonging to the deceased, and were from time to time thereafter examined, under oath, with respect to the matters alleged in the petition.   No further proceedings have been had against Jack Hicks.

On April 10, 1930, an order was made by the surrogate hearing the proceeding directing Charles M. Hicks, the appellant, to appear on April 15, 1930, and show cause why he should not pay over to the temporary administrator the sum of $98,950, " received and drawn by him out of and on account of the joint accounts as set forth and alleged in the annexed petition and affidavit and which is properly the property of the estate of Percival Thomas, deceased."

On October 9, 1931, a decree directing payment by Charles M. Hicks of the sum of $30,000 was duly made and entered.

Appellant and decedent had had business transactions together theretofore, but the particular transactions out of which it is claimed that the appellant's liability arose were all based on a certain written agreement dated November 2, 1928, the terms of which are contained in a copy thereof annexed to the petition.

This agreement was drawn by Mr. Thomas and the appellant jointly and signed by the parties.

The agreement reads as follows:

" 190 RIVERSIDE DRIVE.

" This agreement, heretofore verbal, and herewith made in writing on this second day of November, 1928, for the purposes of defining the individual interests of Percival Thomas and Chas. M. Hicks in various joint speculative accounts now being carried in their joint names with Parrish & Co., 25 Broadway, New York City, and Campbell, Starring & Co., 52 Wall Street, New York City.

*" First.* The considerations interexchanged have been and are the guarantying of said accounts by said Percival Thomas and the securing of information by said Chas. M. Hicks upon which the trading has been and is being done.

*" Second.* It is understood and agreed that all profits and losses in connection with these speculations shall be equally divided between said Percival Thomas and Chas. M. Hicks.

*" Third.* Parrish & Co. and Campbell, Starring & Co. have been and are furnishing us each individually with daily reports of all transactions, withdrawals of money, etc., and also with regular monthly statements and showing conditions of said accounts and each of us are and have been at all times fully conversant with all transactions made for said accounts.

*" Fourth.* The undersigned agree that in the event of the death of either one of us, the survivor shall have the sole authority to liquidate aforesaid accounts and shall have one year after day of decease to accomplish said liquidation and the covenants herein shall be binding upon our heirs, executors, administrators, successors and assigns.

" (Signed)           " PERCIVAL THOMAS,
                               CHAS. M. HICKS."

Under this agreement the appellant and the deceased operated certain joint accounts with stock brokerage houses, through which they bought and sold stocks on the market.

These accounts were conducted and operated by both the appellant and the deceased, and nothing was done at any time by the appellant in connection with the said accounts without the full knowledge, consent and approval of the deceased, except for a brief period in the latter part of 1929, when the deceased was ill and appellant was forbidden by the physician of decedent to consult with him about the market and market conditions. A few days later, however, and after the deceased had recovered from his temporary ailments, he was fully advised in connection with everything appellant had done, and after being so advised, Mr. Thomas fully ratified, approved and commended the appellant's handling of said accounts.

Records of the said joint accounts were furnished to both the appellant and Mr. Thomas, and Mr. Thomas employed an accountant to go over and check up the said records once each month.

The brokerage houses delivered duplicate, daily statements of all transactions had in connection with the said accounts and also monthly duplicate statements throughout the years 1928 and 1929, which said accounts were examined not only by the deceased,

but were audited by an accountant then employed by him for that purpose.

The joint accounts in question, during practically all of the years 1928 and 1929, up to about June, 1929, showed profits ranging from $150,000 to more than $335,000.

The basis for the amount fixed by the surrogate in appellant's admission that he may have withdrawn $30,000 between January 1, 1929, and December 31, 1929.

Every withdrawal of money from said accounts made by appellant for his own personal use was made at the direction of Mr. Thomas, who at the same time withdrew a like amount for his own personal use.

At the end of 1929 or the beginning of 1930, all of the joint accounts were transferred into the personal account of Percival Thomas, pursuant to another agreement dated December 4, 1929, which agreement provided for the rescission of the contract of November 2, 1928; the assumption by liability by Percival Thomas for all losses sustained upon the said joint accounts; and the release of Charles M. Hicks from all liability in connection with each of these said accounts, and the assignment by Charles M. Hicks to Percival Thomas of all his right, title and interest in and to any and all stocks and securities then held upon each of said joint accounts, and waiving and surrendering any and all claims, rights and interest in and to any profit which may be realized at any time thereafter upon each of said accounts. Charles M. Hicks also covenanted and agreed to execute any and all instruments in writing necessary to effect a transfer of his interest in each of these said accounts to the said Percival Thomas.

The liquidation and control of the said joint accounts was to be solely vested in the said Percival Thomas during his lifetime, and in his executors after his death.

The appellant on his examination denied that either at the time of the death of the deceased, January 30, 1930, or at any time thereafter, he was in possession of any stocks, bonds or other property belonging to the deceased. He also denied that at any time during 1929 he had any securities belonging to the deceased in his physical possession, except on November 7, 1929, when the appellant went with Kathryn T. Hicks, his wife, to the Chemical Bank and Trust Company, Seventy-third Street Branch, to obtain certain certificates of stock. These were taken from the safe deposit box of the deceased by appellant's wife, who had a written power of attorney, and under written instructions from the deceased. These securities were taken to the apartment of Percival Thomas, who indorsed them, his signature being witnessed by Margaret Broderick, a nurse. They were then delivered by appellant to

Charles D. Barney & Co., brokers, and appellant received a receipt from them for the securities so delivered.

The agreement of December fourth was drawn by the personal attorney for the deceased.

The personal physician of the deceased during the last four or five years of his life testified that he was in full possession of his faculties during the transaction of business with appellant.

The record fails to disclose that the $30,000 or any part thereof was in the possession or under the control of Charles M. Hicks at the time of decedent's death on January 30, 1930, or at any other time subsequent to the actual withdrawal of the several amounts, making up this total, from the brokers' offices where the joint accounts were maintained.

The surrogate has found that Charles M. Hicks, by reason of his withdrawals from the joint accounts, long prior to decedent's death, became indebted to, and now owes, his estate the said amount, and has directed repayment thereof.

Section 40 of the Surrogate's Court Act defines the general powers of the surrogate and subdivision 4 of the section (as amd. by Laws of 1924, chap. 100) specifically provides that he shall have power " to enforce against a respondent the delivery of personal property, or the payment of the proceeds or value of personal property belonging to or withheld from an estate."

This provision is supplemented and applied to discovery proceedings by sections 205 and 206 of the said act (as amd. by Laws of 1924, chap. 100), which provide for the presentation of a petition by an executor or administrator showing " that money or other personal property, or the proceeds or value thereof, which should be delivered or paid to the petitioner * * * is in the possession, under the control or within the knowledge or information of a person who withholds the same from him, whether such possession or control was obtained in the life time of a decedent or subsequent to his death."

These provisions do not indicate an intent of the Legislature to vest in Surrogates' Courts jurisdiction of actions at law for the recovery of common debts or to enforce ordinary contract obligations. An action to establish a debt must still be brought in the common-law forums where the evidence may be presented by testimony taken in open court.

Charles M. Hicks was the sole witness here and the remainder of the record consists of the allegations of the petitions and affidavits submitted in the proceeding for discovery.

The finding as to the amount due from Charles M. Hicks to the

estate is not supported by competent common-law evidence and was not duly made in form approved by law.

The fact as to whether the withdrawals of Charles M. Hicks were wrongful must be determined solely upon his testimony, and upon the documentary evidence offered and received during his examination. No finding can be made on petitions or affidavits as to the existence or non-existence of a liability for debt.

There is no proper proof in the record that at the time or times when withdrawals were made by Hicks and like withdrawals made by the decedent the joint accounts did not show profits to which both Hicks and the decedent were entitled to equal shares, as provided in their agreement of November 2, 1928, and hence no proof that property specific in its nature, of the decedent, is in the hands or under the control of Charles M. Hicks, appellant.

The decree should be reversed, with costs and disbursements to the appellant payable out of the estate, and the application denied.

FINCH, P. J., O'MALLEY and TOWNLEY, JJ., concur; MARTIN, J., concurs in result.

Decree reversed, with costs and disbursements to the appellant payable out of the estate, and the application denied.