In the Matter of the Application of the CHEMICAL BANK AND TRUST COMPANY, as Temporary Administrator, etc., of PERCIVAL THOMAS, Deceased, Respondent, for the Discovery of Property Withheld.

BAKER, WINANS & HARDEN, Appellant.

First Department, May 20, 1932.

*James F. Donnelly* of counsel [*Irwin M. Berliner* and *Victor S. Gettner* with him on the brief; *Olvany, Eisner & Donnelly*, attorneys], for the appellants.

*David M. Neuberger*, for the respondent.

TOWNLEY, J.  This proceeding was begun by an order to show cause under sections 205 and 206 of the Surrogate's Court Act for a discovery of property withheld.  Certain stock had been previously put up with appellant brokers as collateral for loans.  The deceased, Percival Thomas, had a margin account with the brokers.  On October 1, 1929, he executed and delivered to appellant the instrument by which he personally guaranteed the accounts of two of appellant's customers, R. H. Phillips and Mercer Hicks.  Prior to that, on July 20, 1929, decedent had appointed his daughter, Kathryn Hicks, his attorney in fact under a full power of attorney permitting her to compromise, settle and adjust all actions, accounts due and demands subsisting or to subsist as she might think proper.  On January 6, 1930, the Percival Thomas account showed a debit balance of $13,858.48.  To cover that there was in the account 700 shares of Case Threshing Machine Company shares.  On the same date the Mercer Hicks account had a debit balance of $44,179.34, against which there were 150 shares of Case Threshing Machine Company stock.  On that day also the Phillips account showed a debit balance of $38,721.24 with no collateral.  In the guaranty agreement of October first, the consideration for which was the carrying of the accounts of Phillips and Hicks, decedent agreed " to guarantee and hold you [the broker] harmless from and to promptly

pay you on demand any debit balance now or hereafter due thereon and any and all losses now existing on said account or accounts or hereafter arising thereon or therefrom. * * * I agree that you shall have a lien on and may hold as collateral security for said account or accounts any and all securities and equities you may hold or have in any account for me at any time, and I agree that the assertion or enforcement by you of said lien shall not release me as guarantor or otherwise affect this guaranty or my liability for any debit balance or losses on said account or accounts. * * * You shall at all times have both of said remedies to protect and compensate you against any loss or debit balance due on said account or accounts * * *."

During decedent's last illness and because the guaranteed accounts were in an unsatisfactory condition, Mrs. Hicks, acting under the power of attorney, authorized the brokers to merge the Phillips, Hicks and Thomas accounts into a new account to be known as the "Percival Thomas New Account."

On these conceded facts, the learned surrogate held that the consolidation was of no force and effect, and was wholly unauthorized by the power of attorney and the guaranty agreements. The brokers were, therefore, directed to pay over decedent's personal balance.

The surrogate had full power to hear the claim under sections 40, 205 and 206 of the Surrogate's Court Act (as amd. by Laws of 1924, chap. 100), since the Surrogate's Court has jurisdiction "'to dispose of every claim to property which should be delivered to an executor, administrator or guardian.'" (*Matter of Wilson,* 252 N. Y. 155, 158; *Matter of Akin,* 248 id. 202.) We concur, however, in the view expressed by Mr. Justice McAvoy in *Matter of Thomas* (235 App. Div. 450), decided herewith.

The power of attorney gave Kathryn Hicks the privilege of settling, compromising and adjusting claims against the decedent. This power was broad enough to have permitted her to direct the merger of the accounts. Naturally, the action taken to merge the accounts could be justified only by the fact that the decedent had guaranteed the Phillips and Hicks accounts and had specifically granted appellant a lien on any account which he himself might have. By express contract, appellant was privileged, regardless of the merger of the accounts, to apply the collateral in the decedent's account to the satisfaction of the claims against the Phillips and Hicks accounts. It is quite immaterial whether this application was made in the form of a merger or by direct appropriation of the collateral to satisfy the indebtedness of the customers.

Appellant, accordingly, as a matter of fact, established its claim to the proceeds and the application should have been denied.

The decree should be reversed, with costs and disbursements to the appellant payable out of the estate, and the application denied.

FINCH, P. J., McAVOY and O'MALLEY, JJ., concur; MARTIN, J., concurs in result.

Decree reversed, with costs and disbursements to the appellant payable out the estate, and the application denied.