## In the Matter of the Estate of HYMAN B. RUBIN, Deceased.

Surrogate's Court, New York County, May 26, 1938.

*Irving Sohon,* for the petitioners.

*Kaufman & Weitzner [Samuel H. Kaufman, David G. Haskins* and *Eugene M. Parter* of counsel], for the respondent.

DELEHANTY, S. Under an order in discovery issued by this court petitioners, as executors of the estate of deceased, seek to recover from respondent certain securities (or the proceeds or value thereof) which are alleged to have been the property of deceased. In her answer to this discovery order respondent denied that she had in her possession or under her control any of the property referred to in the petition. After the hearing had progressed for a time the court ordered a bill of particulars to be filed by petitioners specifying the property in respect of which claim was made. By like direction respondent served a supplemental answer in which she asserted in part the sole and exclusive ownership of some of the property claimed. She alleged that all other property received by her and so particularized by petitioners had been received for a valuable consideration from her deceased husband.

On the issues formulated by the original pleadings, by the bill of particulars and by the supplemental answer the hearing proceeded to the point where the petitioners rested their case. Then by agreement of the parties and the court, a formal motion to dismiss the proceeding was made in writing by respondent. In that motion failure of proof on the part of petitioners is alleged not only in respect of the original ownership by deceased but (assuming original ownership) in respect of any identifiable interest therein on the part of his estate. Separately the motion is based upon the alleged laches of petitioners. Finally, denial of the jurisdiction of the court is made basis to the motion. On the issues thus formulated the parties have filed briefs on the power of the court to act and on the extent of the relief due petitioners on the basis of the facts proved in this record.

While a very substantial amount of testimony was taken and a large volume of exhibits marked in evidence the statement of petitioners' claim can be made in small compass. Respondent is the widow of a now deceased attorney who in his lifetime represented Hyman B. Rubin both as attorney in his legal matters and also as agent in his financial affairs. The court is satisfied on the record that the transfer next to be referred to was made to the deceased husband of respondent in his character as attorney for and agent of Hyman B. Rubin and that the property received by respondent's deceased husband was received by him in a trust character. This property consisted of a free cash balance and

certain securities held by a stock brokerage house in an account standing in the name of deceased. After the transfer to respondent's husband of this property of deceased a large quantity of so-called " Rubber " securities were delivered into the hands of respondent's now deceased husband for account of Hyman B. Rubin. These securities were delivered subject to payment of a debit balance. The aggregate of the securities and money already in respondent's husband's hands for account of Hyman B. Rubin plus the " Rubber " securities received by him largely exceeded in value the adverse balance which had to be paid on the " Rubber " securities at the time of their delivery. When the original securities were taken by respondent's husband for account of deceased, respondent's husband had a number of accounts in a brokerage house. These accounts were separately labeled. In his later transactions these accounts were transferred to other and different brokerage houses where again he operated multiple accounts. Disregarding details it suffices at this point to say that a total of approximately $200,000 worth of securities and money were received by respondent's husband and that legitimate charges were paid by him to the extent of something less than $160,000 leaving net in his hands more than $40,000 of money realized upon the transactions which he handled for account of deceased. Parenthetically it should be said that certain of the securities received originally by respondent's husband for account of deceased were delivered out of one of the brokerage accounts to respondent's husband personally and have been lost to sight. The controversy here relates to the net proceeds of approximately $40,000 representing the balance derived from the transactions in the other securities.

It is unnecessary here to trace the particular brokerage transactions of respondent's husband in relation either to the securities which belonged to deceased or in relation to his own stock speculations. At successive periods he had many accounts in several brokerage concerns. He carried loans in banks. He deposited securities in a safe deposit box for a time. In this long and involved course of dealing with the securities of deceased and with the proceeds derived from them it is alleged by respondent through counsel that the identity of deceased's property (respondent assuming only for the sake of the argument that anything has been shown to be deceased's property) had been lost and that the claim of petitioners must fail for that reason alone. The position taken by petitioners is that they have established wrongdoing on the part of respondent's deceased husband; that they have established the receipt by him of a balance of $40,000 more or less belonging to deceased and chargeable to respondent's husband as trust funds;

that they have traced the transactions of deceased to a point where they show *prima facie* at least that certain securities in the accounts of respondent's deceased husband reached respondent's hands without consideration; that in the hands of respondent's husband all of the money and securities in his respective accounts were subjected to a lien in favor of the estate of deceased; and finally that in the hands of respondent the securities are deemed equitably to be the property of the estate of deceased and are deliverable to petitioner for that reason. It should be reiterated that the question now presented for discussion is presented on the *prima facie* case of petitioners and that the parties have sought a ruling upon the validity of that *prima facie* case before respondent enters upon any defense on the merits under her answer asserting acquisition by her for a valuable consideration.

The court must direct attention first to that portion of the motion to dismiss which challenges the jurisdiction of the court in circumstances such as are here presented. The statute governing the case is section 206 of the Surrogate's Court Act which says in part: " If it appears that the petitioner is entitled to the possession of the property, the decree shall direct delivery thereof to him, *or if the estate property shall have been diverted or disposed of the decree may direct payment of the proceeds or value of such property or may impress a trust upon said proceeds or make any determination which a court of equity might decree in following trust property or funds.*" (Italics supplied.) The italicized portion of the excerpt just quoted was added to the original section 206 of the Surrogate's Court Act by chapter 100 of the Laws of 1924. The effect of that amendment was commented on in *Matter of Akin* (248 N. Y. 202) and in *Matter of Wilson* (252 id. 155). Each of the cited cases referred to *Matter of Hyams* (237 N. Y. 211) which had enforced limitations on the authority of the Surrogate's Court under the law as it existed prior to the amendment. Each of the cited cases states in the broadest terms that the jurisdiction of the Surrogate's Court is now adequate to meet any situation that may arise in respect of property owned by a deceased or the proceeds of any such property which have been diverted or disposed of. It is not without value to comment on the particular text of the amendment of 1924. That text says that the decree " may direct payment of the proceeds " of property. It says that " the decree may direct payment of the * * * value " of the property. It says that " the decree may impress a trust " upon the proceeds of the property. It says finally that the court may " make any determination which a court of equity might decree in following trust property or funds." In *Matter of Akin* (*supra*) the Court

of Appeals summarized the effect of these provisions by saying that " in a discovery proceeding the Surrogate's Court has now jurisdiction to dispose of every claim to property which should be delivered to an executor, administrator or guardian." Unless, therefore, a court of general equity jurisdiction would be constrained to hold that the record now made furnishes no basis for any equitable relief this court has power to afford a remedy to petitioners. The court has no doubt of its complete jurisdiction to grant relief to petitioners on the case thus far made. It desires to make note of the fact that in the amendment of 1924 there is used the words " or value " which are not without significance. The disjunctive " or " is used between the words " proceeds " and " value." The legislative intent to differentiate between the two words seems, therefore, to be clear. On the record here made the court holds that under accepted principles of equity any securities or money commingled with the trust funds belonging to deceased in the hands of respondent's husband or the result of transactions employing such funds are to be deemed " proceeds " within the meaning of the statute. The right to pursue and to recover the " value " of diverted property fortifies the position of petitioners here but is not essential to their success. Accordingly the court holds that the objection to the jurisdiction of the court (objection [i]) is without substance and overrules it.

It should be noted that up to this point respondent is claimed to be a transferee of trust-impressed securities who gave no consideration therefor. Her status (assuming lack of consideration) is no better than that of her deceased husband. So in the discussions of the authorities she will be identified with her deceased husband in applying the legal principles pertinent to her responsibility to petitioners.

In the written motion to dismiss this proceeding subdivision (c) challenges the sufficiency of the proof to establish that the securities originally received by respondent's husband were the property of deceased or were delivered to respondent's husband in a trust character. The court rules affirmatively that the facts establish *prima facie* original ownership by deceased and delivery to respondent's husband for account of deceased. Subdivision (d) of the motion denies the sufficiency of the proof of delivery of any of the " property described in the petition or the proceeds or value thereof " to respondent. The court holds as matter of fact that proof has been made *prima facie* of the receipt by respondent without consideration of " the proceeds or value " of property of deceased. Subdivisions (e), (f) and (g) in different text raise the same issues as have just been commented on. For that reason

they need no separate ruling. Subdivision (h) asserts laches on the part of petitioners. The court holds that petitioners have been diligent in their proceedings and that no basis exists for dismissal on the ground of laches. Objections (a) and (b) raise questions respecting the legal effect of the whole proof even on the fact findings made hereinabove.

It should be noted that in this controversy there are no conflicting equities. Here only the alleged wrongdoer and the alleged sufferer by his wrong are before the court. In such circumstances " the jurisdiction exercised for the protection of a party defrauded by the misappropriation of property * * * is exceedingly broad * * *. The relief will be moulded and adapted to the circumstances of the case, so as to protect the interests and rights of the true owner." (*Newton* v. *Porter*, 69 N. Y. 133.) " Guided by the cardinal principle that the wrongdoer shall make nothing from his wrong, equity so moulds and applies its plastic remedies as to force from him the most complete restitution which his wrongful act will permit." (*Mooney* v. *Byrne*, 163 N. Y. 86.)

The real challenge to petitioner's case is made on the basis that all trace of the trust funds has been lost and that in such circumstances petitioners are relegated to a general claim against the assets of the deceased fiduciary. As has been noted already there are no questions here presented respecting the rights of other claimants against that estate. As the record stands the only question is whether or not an enforcible claim has been proved against respondent as transferee in the lifetime of her husband, without consideration, of assets traced into the hands of the latter and in his hands charged with a trust character. (Compare *Baker* v. *New York Nat. Exch. Bank*, 100 N. Y. 31, 35.)

It may be useful to refer to the cases which deal with commingling of funds and the extent to which courts require a tracing and identification by one who seeks to recover them. Respecting this need for identification it is said: " The courts have differed in the past, and to some extent they still differ, concerning the doctrine and its applications, but, in the main, these differences have been and are merely with respect of the position of the vanishing point of the right of pursuit. In recent times that vanishing point has undergone a general recession." (L. R. A. 1916C, p. 40.) Whatever may be said respecting the more rigid rules laid down in the early cases the courts now undoubtedly apply a standard which permits recovery whenever fairly it can be said that the property or its results have been traced either in specie or constructively.

It was said by the General Term in this department in connection with a misappropriation of partnership assets by a liquidating partner that "if * * * the surviving partner has disposed of the assets and stock of the old firm and has invested the proceeds thereof in new stock, so that the identity of the old stock and assets are lost, and has mingled in such new stock property of his own, in such manner that it cannot be separated, the court will impress the lien of the representatives of the deceased partner upon the whole of the new stock to indemnify the trust fund, except as against a *bona fide* purchaser." (*Hooly* v. *Gieve*, 9 Abb. N. C. 8, 26; affd., 9 Daly, 104; affd., 82 N. Y. 625.)  In the note to this case found in Abbott's New Cases at pages 41–42, it is said:

" The old aphorism that ' money has no ear-mark,' which was formerly often assigned as a reason for not following a fund after it had been reduced to money and mingled with other moneys, is now restrained by the growing recognition of two just and practicable rules of modern equity, which may be stated thus: 1. Where trust moneys have lost their individuality by being commingled with other moneys, or turned into other property, equity may establish a charge on the entire fund, in favor of the *cestui que trust*, to the extent to which that can be done without injustice to those having other equities in the fund.  2. In doing this it may trace the moneys by all the means that bookkeeping and an equitable application of payments afford, so as to fasten on the resulting fund a charge or lien for the amount diverted, so far as the fund can justly be subjected to the trust, but no further.

" If the trust money is thus traceable, the court will not decline to reach it merely because it has been commingled."

The argument that once identity is lost the right to trace and to recover is lost as well finds its answer in *Baker* v. *New York National Exchange Bank* (100 N. Y. 31), where the court said (pp. 34–35): " The supposed difficulty in maintaining the action arising out of the fact that the money deposited was not the specific proceeds of the plaintiffs' goods, is answered by the case of *Van Alen* v. *American Nat. Bank* (52 N. Y. 1).  Conceding that Wilson & Bro. used the specific proceeds for their own purposes, and their identity was lost, yet when they made up the amounts so used, and deposited them in the trust account, the amounts so deposited were impressed with the trust in favor of the principals, and became substituted for the original proceeds and subject to the same equities."

Where there is a legal obligation resting on the holder of property to keep it separate from his own " a tracing which is constructive

rather than actual, has been approved." (*Matter of Potter*, 251 App. Div. 679; affd., 278 N. Y. 534.) That property in the hands of an agent or trustee should be kept separate from the agent's private resources is the standard rule. If the agent claims the right to commingle he must establish that right. Here the duty to keep separate has been found by the court as a fact. Consequently the cases which authorize a constructive rather than an actual tracing are applicable. (*Matter of Potter*, *supra; Brown* v. *Spohr*, 180 N. Y. 201; *Van Alen* v. *American Nat. Bank*, 52 id. 1; *Matter of International Milling Co.*, 259 id. 77.) Petitioners here have shown a continuity of relationship between the funds which respondent's husband received net out of the property of deceased and the securities which in part reached respondent. That showing of continuity of relationship constitutes a sufficient constructive tracing.

Reference has been made already to the text of the amendment of 1924 by which the discovery process was extended to the point of authorizing the recovery of the " value " of property not recoverable in kind. A court of equity has power to render a money judgment when conditions forbid the enforcement of the more direct remedies invoked in the equitable process. The mere inability to find the fund in the hands of a respondent in discovery does not bar a decree in discovery. (*Matter of Wilson*, *supra.*) That case is authority for holding that respondent's husband if living could have been compelled to pay over the $40,000 received by him for account of deceased had he been respondent in this proceeding. Respondent stands in no better case than her husband. To the extent of anything of value which she received without consideration from her husband she also must make restitution. Petitioners here have sought particular securities transferred to respondent rather than their money value. The court holds upon the proof that they have made a *prima facie* case entitling them to delivery thereof.

In order to permit respondent to present her proof in answer to the *prima facie* case made by petitioners the proceeding has been restored to the trial calendar for the 15th day of June, 1938, at ten o'clock A. M.