George Frankenthaler, S.
The subject matter of the discovery proceeding instituted by the ancillary administrator c. t. a. is cash and securities held by J. P. Morgan & Co- *65 Incorporated, as escrow depositary. The assets have a value of approximately $1,800,000. The petition alleges that these assets were the property of the decedent at the time of his death. It admits that other persons will probably claim an interest in the property, and asks an examination of respondent Morgan & Co. “ concerning the source, ownership, nature, and value of the assets so held by it, and concerning the other persons claiming to have an interest in the aforesaid assets, so that such other persons may, if the Court so directs, be made parties to this proceeding ’ The petitioner demands that respondent be directed to deliver to him “ the property belonging to [this] estate ”.
The respondent moves to dismiss the petition and to vacate the discovery order on the ground that: first, the information sought by the petition is fully within the knowledge of petitioner ; second, this court does not have jurisdiction of the subject matter of the proceeding; third, there are numerous adverse claimants of whom this court does not have and cannot obtain personal jurisdiction; and fourth, the granting of the relief herein would of necessity result in a multiplicity of actions.
The first and third ground for dismissal are without merit. It may indeed come to pass that this court cannot obtain jurisdiction of some one or more of the necessary parties, but until an attempt is made to get jurisdiction of them, it cannot be said as matter of law that such jurisdiction will not be obtained. Nonresident parties may voluntarily appear and thus jurisdiction in personam will be complete. As to the fourth ground of dismissal, we need now say only that an interpleader action having been commenced in the Supreme Court, that court has authority to stay this proceeding until final disposition of the interpleader action if it deems such action necessary and proper. (Civ. Prac. Act, § 285, subd. 4.) This court will not attempt to fetter the exercise of discretion by the Supreme Court by either staying or refusing to stay this proceeding. It will simply proceed in due course with the pending proceeding unless and until the Supreme Court stays this proceeding.
There remains for determination the second ground of dismissal, namely, that this court lacks jurisdiction of the subject matter. That question must be determined at the very outset, for if this court lacks jurisdiction of the subject matter, there is no authority for attempting to bring in other parties or for directing an examination of the respondent.
The respondent contends that petitioner is seeking to enforce contract rights against it and that this court has no jurisdiction *66 of such a controversy. The respondent’s moving papers set forth the following background of the present dispute: Preliminary to any of the transactions which gave rise to the present controversy were certain rather serious and substantial claims asserted against the decedent and his mother, Eleanor Patenotre, by the Federal taxing authorities. In 1947 Morgan & Co. had an account in the name of Eleanor Patenotre. In May of that year, Mrs. Patenotre and her two children (the decedent and Yvonne de Castellane) executed a writing wherein the mother disclaimed all interest in that account, and the two children purported to divide the securities and cash between them as therein particularly stated. That division was subject to the consent of the United States because it had asserted a tax lien against the property. The Government’s consent to a change of ownership was not given. Respondent alleges that later correspondence between the decedent and his sister recognized the division agreed upon, but it also recognized the fact that there could be no distribution until the income tax litigation was concluded.
A letter dated September 29, 1949, sets forth the contract upon which the respondent bases its motion. That letter, addressed to Morgan & Co. and signed by the decedent and his mother, was obviously the result of an understanding with the Government for the protection of its tax claim. In that letter, Morgan & Co. was instructed to hold the securities and cash then in the account, valued in excess of five millón dollars, on terms and conditions therein stated. Sufficient securities were to be sold to permit an immediate payment of $2,000,000 to the Government and $500,000 to the decedent or his mother. All of the other property was directed to be held ‘ ‘ in escrow for the benefit of the United States of America and/or the Collector of the Internal Revenue for the Second District of New York * * * to secure the payment of any and all Federal income tax liabilities for the calendar years 1931. to 1949, inclusive, which may be finally determined to be due from the undersigned Eleanor Patenotre and Raymond Patenotre, either or both of them. * * * You are directed to enter into an escrow agreement with [an official of the Bureau of Internal Revenue] in order to carry out the foregoing instructions, which escrow agreement shall be in the form attached hereto. * * Upon the termination of said escrow agreement, you shall hold any securities and other assets then remaining subject to the written instructions of the undersigned or either of them, or their duly authorized representative.”
*67 The proposed escrow agreement with the United States authorities was promptly made, and the assets in the account have been held pursuant to that agreement. Ah tax liabilities to the United States have now been discharged, the United States Government has no further interest in the account, and the appropriate Federal officers have so certified. The substantial balance is held for the rightful owner or owners, and the respondent asserts no beneficial claim other than for its costs, expenses and fees.
For the purposes of this motion we must accept as true the allegation of the petition that the “ aforesaid assets so held by Morgan were the property of Raymond Patenotre, deceased, at the time of his death.” We thus have a case where property owned by the decedent has been held in escrow by the respondent for purposes particularly specified, and such purposes having been fully accomplished, the right to full and complete possession of the property reverts to the legal owner. It is undoubtedly true, as respondent alleges on this motion, that the specific assets on hand are not the same as the assets originally delivered to it, because in addition to the tax payments, the respondent has collected income, sold securities and reinvested cash in United States Treasury bonds, all in accordance with the terms of the escrow agreement. It is true also that the agreement of the parties provides that upon termination of the escrow agreement with the Government, Morgan & Co. ‘ ‘ shall hold any securities and other assets then remaining subject to the instructions of the undersigned or either of them”, and that the decedent could recover from the respondent only within the terms of that agreement. It is that factor which, in the respondent’s opinion, deprives this court of jurisdiction because, it says, the proceeding becomes one to enforce a contract obligation. But we must not lose sight of the fact that the petitioner’s claim is based upon his asserted title to the property. The contract did not give him title to the property; it merely specified conditions under which the respondent could retain possession, and those conditions have been now fully satisfied.
Section 205 of the Surrogate’s Court Act does not explicitly exclude claims arising from contract. It specifies as the subject matter of a discovery proceeding “money or other personal property or the proceeds or value thereof, which should be delivered or paid to the petitioner or included in an inventory or appraisal The courts have construed this text to mean “specific personal property or money which belongs to the estate ” (Matter of Trevor, 309 N. Y. 389, 392) thereby exclud *68 ing from the scope of this statute a mere cause of action to recover a money judgment or to enforce a contract right. In Matter of Trevor, the court said (p. 393): [T]he Legislature has, by means of a discovery proceeding, vested in the Surrogate’s Court jurisdiction to aid a personal representative in his duty to recover property of the decedent or of the estate or the proceeds of the sale of such property but has not vested in the Surrogate’s Court jurisdiction over actions at law for the recovery of common debts or to enforce ordinary contract obligations and * * * an action to establish and enforce a debt must still be brought in the common-law forums. The nature of such an action is in personam and it does not come within the general purview of the statute authorizing in rem discovery proceedings.” The last sentence just quoted, when taken from its context, might seem to indicate that the test of jurisdiction is whether the action be one in rem or whether it be one in personam. The context clearly indicates, however, that the Court of Appeals did not intend to set up any such narrow test. A discovery proceeding has been said to be akin to an action in replevin (Matter of Sichel, 162 Misc. 2, 4; Matter of Hilliard, 172 Misc. 273, 275; Matter of Brady, 286 App. Div. 672, 675) and such a proceeding is not one in rem in the strict sense of the term. (3 Freeman, Judgments [5th ed.], p. 3121.) The Court of Appeals used the terms “ in rem ” and “ in personam” rather in the sense in which they were used in Matter of Lusher (159 Misc. 387, 389) from which the following statement of the rule was quoted with approval: “ ‘ The line of demarkation between the instances in which the court has jurisdiction and those in which it has not, is wholly unmistakable. If the genesis of the obligation of the respondent was predicated on the possession of an asset, jurisdiction inheres. If it was based merely on a general claim against him, purely in personam, it does not.’ ” (See, also, Matter of Brazil, 219 App. Div. 594, 596.)
The distinction between these two classes of cases has always been recognized by the courts. Jurisdiction has consistently been refused where the decedent’s right to the property depended upon a contract which the petitioner sought to enforce in a discovery proceeding. (Matter of Jastrzewski, 252 App. Div. 384; Matter of Thomas, 235 App. Div. 450; Matter of Thoms, 165 Misc. 398; Matter of Campbell, 145 Misc. 389.) It has never been held, however, that jurisdiction that would otherwise clearly exist is lost whenever it appears that the respondent’s taking of the property was accompanied by his agreement to return it. Such a rule as that would mean that *69 jurisdiction would exist only when the original taking of the property by the respondent was wrongful. No decision has ever attempted so to confine the scope of the statute. On the contrary an unbroken line of decisions makes it clear that the statute cannot be so restricted.
Matter of Kiamie (309 N. Y. 325) was a discovery proceeding wherein the estate sought to recover the value of property improperly sold by a pledgee. It is true that no question of jurisdiction was discussed in the court’s opinion, but obviously the Court of Appeals would not have remitted the matter for further proceedings in the Surrogate’s Court if this court had no jurisdiction of the subject matter of the proceeding. There, as here, the respondent held the securities under a written agreement. There, as here, the claim of the petitioner fiduciary was based upon the decedent’s ownership of the property. Yet in that case it was not even suggested that the mere mention of a contract caused the court to lose jurisdiction of the owner’s demand for its return.
In Matter of Trevor (supra) the Court of Appeals discussed, without criticism and with seeming approval, proceedings in which discovery was held to be a proper remedy to recover: insurance proceeds from an insurer under a ‘ ‘ facility of payment ” clause in the policy (Matter of Howley, 133 Misc. 34); moneys given by decedent to respondent to be held for decedent’s account (Matter of Gruen, 1 Misc 2d 41); a sum equal to the graft paid by a vendor to an agent of the estate (Matter of Browning, 177 Misc. 328, affd. 262 App. Div. 489); money held by an attorney in trust for decedent (Matter of Ostrow, 162 Misc. 783); proceeds of property placed with respondents for appraisal and sale (Matter of Fraley, 129 Misc. 803); money and other property in the hands of a trustee or agent. (Matter of Rubin, 168 Misc. 81. See, also, Matter of Stern, 306 N. Y. 862; Matter of Wilson, 309 N. Y. 1011, question Nos. 1, 2.) In all of these cases except perhaps the one involving a bribe of an agent, the respondent initially had rightful possession of the property which was the subject matter of the discovery proceeding, and the respondent’s possession had its foundation in an agreement or consent. In all of these cases, there was at least an implied promise to deliver the property to the owner when certain conditions had been fulfilled. In none of them was the express or implied promise fatal to the Surrogate’s jurisdiction.
We have said that a discovery proceeding has often been likened to the action of replevin or the modern action to recover a chattel. It is pertinent to note that the action of replevin *70 did not fail when possession was lawfully taken under an agreement providing for the return of the property. In such case a demand for return of the property was a prequisite of replevin. (White v. Brown, 5 Lans. 78; Treat v. Hathorn, 3 Hun 646; Moran v. Abbott, 26 App. Div. 570; Delahunty v. Hake, 10 App. Div. 230; 7 Carmody’s New York Practice, § 665.) Indeed, in this State, the remedy of replevin was extended so “‘as to make it a substitute for detinue, and a concurrent remedy in all cases of the unlawful caption or detention of personal property,’ ” (Sinnott v. Feiock, 165 N. Y. 444, 446) and the gist of the common-law action of detinue, which was absorbed in the action of replevin, was the wrongful detention of property which had come lawfully in the possession of the defendant. (16 Am. Jur., Detinue, § 4, p. 951.)
In the pending case, we assume the decedent’s ownership of the assets as alleged in the petition. The petitioner will be required of course, to prove that fact. The contract referred to by the respondent justified its possession of the assets and its distribution of property pursuant to the terms thereof. The respondent’s obligation to return the property springs not alone from its express promise but also from the owner’s right to the return of his property when the term for another’s possession of it has expired. On demand, the respondent is bound to return it to the true owner. Its continued possession after due demand from the owner constitutes unlawful detention of such property.
The court is therefore of the opinion that nothing in the text of section 205, or in its history, background or construction, justifies the dismissal of the petition on the mere suggestion that respondent’s possession of the property was initially assumed by virtue of an agreement with the owner. The motion to dismiss the petition is denied.
The motion papers reveal that there are other persons who claim an interest in the property and a final and conclusive determination of ownership cannot be made without "the others who claim ownership. A supplemental order shall issue to such persons as provided in section 205 of the Surrogate’s Court Act.
Submit order on notice accordingly.