S. Samuel Di Falco, S.
The administratrix of the decedent’s assets instituted a discovery proceeding under section 205 of the Surrogate’s Court Act, for the purpose of compelling Irving Trust Company to deliver to her “ certain money, or other per *444 sonal property, of Borah Minevitch * * * namely, $1,850 which should be delivered to [the] petitioner.” Irving Trust Company denies that it has any money or other personal property belonging to the decedent. It further contends that this court has no jurisdiction to grant the relief demanded by the petitioner.
The facts have been stipulated. It appears that the decedent had a financial interest in a theatrical act known as “ The Borah Minevitch Harmonica Rascals ’ ’. William Morris Agency, Inc., was the agent for the group. On April 27, 1955, Irving Trust Company loaned the decedent $10,200. William Morris Agency, Inc., guaranteed the loan. The answer of the respondent alleges that the loan was repayable in 11 installments, one installment on the first day of each month until the entire amount was repaid. The decedent delivered to the bank postdated checks drawn on another bank, aggregating the amount of the loan. On June 1,1955, the first check was duly deposited and collected. In the same month, Borah Minevitch died. During the following month, that is in July, 1955, the theatrical act made appearances in three different cities, and, it is stipulated, that ‘1 by reason of these appearances Minevitch was entitled to certain moneys totalling $1,850.” By the text just quoted, the parties obviously mean that the arrangement between the decedent and the performers provided for his sharing to that extent in the earnings of the group. Patently the stipulation does not mean that the sum of $1,850 belongs to the estate, or there would be nothing at issue here. There is no contention that the stipulation is so broad.
The appearances of the entertainers were not in regular theatres but rather on programs sponsored by organizations or communities. The organizations under whose auspices the performances were held sent checks to Irving Trust Company which presumably covered only the share in which the decedent had an interest. Bach check was payable to the order of Irving Trust Company. The total of the three checks was $1,850. One of the checks indicated on its face that it was “for a/c Borrah Minevitch (Harmonica Rascals) ” and a second check was accompanied by a voucher which stated that it was “ For the account of Borrah Minevitch late owner of the Minevitch Harmonica Rascals appearing on the July 12,1955 ” program. The third check contains no notation. All three checks were received by the bank and were credited against the amount of tbe loan. There is no contention that these funds were to be deposited in a bank account for the decedent. It does not appear that the decedent ever had any bank account with Irving Trust Company.
*445 It has been conceded that the organizations which were required to make payments for the theatrical performances “were instructed by someone to make payment by drawing checks directly to Irving Trust Company.” The parties to this proceeding have no knowledge of the identity of the person who gave the instructions or the reason why payment of any part of the fee was made in that manner.
The petitioner contends that the moneys belonged to the decedent, and that they should have been paid to his duly appointed personal representative. The obligation on the part of the estate to repay the loan is not disputed, but the estate being insolvent, the administratrix demands that any moneys belonging to the decedent be paid to the estate and that all claimants must then share proportionately in the net assets.
The administratrix bases her right to recovery upon section 205 of the Surrogate’s Court Act, which permits the personal representative to recover from a respondent “ money or other personal property ’ ’ belonging to the decedent. The Court of Appeals said in Matter of Trevor (309 N. Y. 389, 392): “ While the statute speaks in broad and unqualified terms of ‘ money or other personal property, or the proceeds or value thereof ’, the decisions interpreting that language disclose that it was not the intention of the Legislature that all estate claims were to be adjusted by way of a discovery proceeding. The purpose of such a proceeding in the Surrogate’s Court is to obtain the possession of specific personal property or money which belongs to the estate, or the value of the proceeds thereof in the event of the disposal of the specific property, and which is in the possession, under the control or within the knowledge or information of the person withholding it * * ®. As was pointed out by Surrogate Wdstgate in Matter of Lusher (159 Misc. 387, 389): 1 The line of demarkation between the instances in which the court has jurisdiction and those in which it has not, is wholly unmistakable. If the genesis of the obligation of the respondent was predicated on the possession of an asset, jurisdiction inheres. If it was based merely on a general claim against him, purely in personam, it does not.’ ”
In the cases in which it was held that the obligation was predicated upon the possession of the money, the decedent was the legal or beneficial owner of the fund or the money belonged to him in equity and good conscience. Thus, in Matter of Wilson (252 N. Y. 155, affg. 140 Misc. 10) and in Matter of Stern (306 N. Y. 862), the moneys were withdrawn from the decedent’s bank accounts prior to death under an unsuccessful claim of gift of *446 the proceeds. Matter of Browning (177 Misc. 328, 329, affd. 262 App. Div. 489) involved moneys received by a corporation which had sold property to the estate, the amount recoverable representing a bribe paid to the estate’s agent and, therefore, money had and received by the vendor, ‘ ‘ which belongs to the purchaser to the extent of the bribe which neither the vendor nor the unfaithful agent may in conscience and good morals retain.” In Matter of Lusher (159 Misc. 387); Matter of Ostrow (162 Misc. 783) and Matter of Rubin (168 Misc. 81), the moneys were received by the respondent as the agent or attorney of the decedent. The subject matter of the suit in Matter of Wilson (309 N. Y. 1011) and Matter of Fraley (129 Misc. 803) was the proceeds of sale of property which belonged to the decedent. The former also involved moneys wrongfully obtained from the decedent by the respondents. In all of those cases, the moneys were specific moneys that belonged to the decedent.
In the pending case the parties have little information with respect to the transactions which resulted in the transmission of funds to the trust company. At the first hearing, the parties submitted the matter to the court as a question of law to be determined on the pleadings. The matter could not be decided solely on the basis of the pleadings, and the court put the matter back upon its calendar for the production of additional, proof. The few stipulated facts now in the record seem to be all that are available to the parties.
The burden is upon the petitioner to establish that the moneys which were received by the trust company belonged to the decedent and were rightfully payable to his personal representative. It is conceded that the fund arose out of the decedent’s interest in the vaudeville act. The record does not disclose precisely what that interest was. Nor does it provide any basis for a finding as to the identity of the person who gave the instructions for payment to the trust company or the source of authority for giving such instructions. There is no basis in the present record for assuming that the person who gave the instructions for payment was without any authority to do so.
The petitioner assumes that the directions for payment to the trust company were given by the Morris Agency. It would not, perhaps, be unreasonable to assume that the Morris Agency, having guaranteed the loan, had an interest in having the loan repaid as promptly as possible. As the agent for the theatrical group, it undoubtedly had a voice in formulating the terms of payment for the performances. The assumption that the Morris Agency did give the instructions for sending a portion of the moneys to the trust company is plainly a guess, rather than a *447 fair inference from the conceded facts. If we were to indulge in speculation, we might further surmise that the guarantor of the loan had taken appropriate steps to protect itself by a pledge or assignment of the decedent’s contract rights. That, again, is pure speculation. Even if the record justified a finding that the Morris Agency gave the instructions for payment to the trust company, it furnishes no basis for a finding that the person giving the instructions had no authority to do so. If we presume that as agent for the group it gave such directions, we should also assume that it acted within the scope of its agency and within the limits of the various agreements. All that the present record indicates is that certain moneys which became payable by reason of the theatrical performances were directed to be paid by the organizations to the trust company. In accordance with the directions which were given to them, the organizations did make the checks payable to the order of the trust company. The good faith of the trust company is not in any way challenged. It received the checks as payments on account of an obligation owed to it by the decedent, and it applied the proceeds to the debt owed to it. The trust company does not admit that the moneys ever belonged to the decedent. It does not pretend to know who owned the funds.
The administratrix would have no greater rights against the organizations which made such payments than would her intestate, if living. She — or he — could recover from the organizations which had contracted for the theatrical performances only if the terms of the agreements provided for payments by them to the decedent. The administratrix has no knowledge of the terms of the agreements made with the respective organizations. She has no knowledge of the arrangements between the decedent and the agency which arranged for the performances. Her position here is that the trust company had no right to receive the moneys because the moneys belonged to the decedent, but she is unable to prove the basis of the decedent’s right to the moneys. The petitioner’s ease is based upon surmise and speculation. She has not been able to establish that the money paid to the respondent was money that belonged to the decedent, or that it had been wrongfully obtained from him or from someone who was holding it for his estate.
The administratrix further argues that the trust company had no right to receive these funds because at the time the respective amounts were received by it, there had been no default on the loan. Coneededily, the sum of $1,000 was due and unpaid on July 1. A like amount was due on August 1. The record indicates that $1,050 was paid at about the middle of the *448 month of July, and that $800 was paid by a check that was allegedly received near the end of August. It would thus appear that the checks received during the month of July were only slightly more in the aggregate than the amount concededly due on the first of July and that the total of all checks received was less than the total amount due on August 1. Moreover, in view of the failure to make payment on July 1, it is not possible to say on this record that the total of the three checks was not due and payable at the respective times when the respondent received them. The petition is, therefore, dismissed. Submit decree on notice accordingly.